McBRIDE, Judge.
This suit is for damages for an alleged assault and battery committed by defendant whose defense is that plaintiff provoked the difficulty by calling him a vile epithet. Plaintiff recovered judgment for $1,300; defendant has appealed.
The scene was the Port Ship Service Building, which is situated on the riverside of the levee at Arabi, St. Bernard Parish. The time was about 6:10 a.m., January 11, 1955, when plaintiff, who is a boatman for Port Ship Service, was reporting for work. Seated in the building were defendant, Peter (or Stanton) Vogt, and two other river pilots, Henry R. Vogt and William A. Post. Also present were Lawrence Serpas, an employee of the Ship Service, and Harold Olsen, a coast guardsman. Other persons may have been present in the building.
The above-named persons heard several knocks, whereupon Capt. Peter Vogt, the defendant, arose and went to the door, and after glancing through the glass window thereof resumed his seat. The person on the outside who proved to be plaintiff, then began uttering a volume of choice waterfront profanity. Whereupon Serpas, nicknamed “Finke,” opened the door and admitted plaintiff who said to Serpas: “Why the hell you don’t open the door?” There is a sharp dispute as to what else was said in the room, but, at any rate, defendant walked over from eight feet away and with his clenched fist struck plaintiff a most violent blow in the face. As defendant put it: “I nailed him with my right hand.”
Plaintiff banged on the door several times and began indulging in the profanity when the door was not promptly opened. He admits he used one of the vilest of expressions, but explains that he had reference to the door and that what he said was: “Open the — door.” Defendant maintains that the plaintiff was not referring to the door at all but that he said: “Open the door you — .” The remark, whatever it was, led to the attack on plaintiff.
Plaintiff maintains he entered the room with hands tucked in his pockets and said to Serpas “Why the hell you don’t open the door?” to which Serpas replied “Dutch, I didn’t know you were out there,” and then defendant struck him and his glasses fell to the floor. According to plaintiff he was rendered momentarily stunned, but he states upon regaining his senses he asked defendant “Why did you do that?” and that defendant answered: “That is for you calling me a — .”
Defendant says he did not open the door because he did not recognize the party on the outside. It was then Müller began the profanity, and he thought Miiller’s vile remark was aimed at him because he had looked through the glass in the door. Capt. Vogt claims he asked Müller upon the latter’s entry into the room whether the words *306 “Open the door you — ” referred to him and that Müller replied “Yes, I mean you” motioning with his finger. Defendant admits letting go with the blow to plaintiff’s face.
The other persons named above, except Olsen, appeared in court as witnesses. The testimony of Olsen, who was about to leave for Coast Guard duty in Texas, was taken by agreement before a notary public and his depositions fully corroborate plaintiff. His statement is that plaintiff addressed the obscene remark to the door and did not refer to defendant or any other individual in the room.
There is also substantiation for defendant’s evidence. Capt. Henry R. Vogt and Capt. Post insist the blow was truck after defendant had inquired if plaintiff intended the remark for him and plaintiff had replied in the affirmative.
Serpas was called to the witness stand by plaintiff. The witness’ sense of hearing is to some extent impaired. However, Serpas said he heard the banging on the door and saw Capt. Vogt arise and look through the glass and then return to his seat. He admits he opened the door and that Müller entered, but when asked “Then what happened?” answered: “Well I didn’t see anything; I don’t know what happened.” He denied that he saw defendant punch Müller. At this point plaintiff’s counsel stated: “Mr. Serpas, I warn you that I intend to contradict your testimony.” Serpas frankly admitted he “didn’t want to get mixed up in this case,” and there is no doubt the witness could have been helpful but was not so inclined. What little testimony he gave is unimportant, except it might be mentioned that at one point Serpas said he heard Capt. Vogt ask plaintiff “Are you referring that to me?” but that he “couldn’t make out the rest.” The trial court in his reasons for judgment ■said Serpas’ “demeanor and testimony were such that he was not entitled to any credibility” and we agree.
The record indicates that some bad feeling previously existed between Capt. Vogt and Müller. On two prior occasions the men engaged in argument, once when Mül-ler complained of Capt. Vogt’s boat causing large swells and again when Müller refused Capt. Vogt the use of a telephone. Whether any ill feeling as existed between the two as a result was one of the factors contributing to the attack is not shown, but we suspect that it may have had something to do with the affair.
It is argued on behalf of plaintiff that under the jurisprudence of the State the mere use of abusive words, however insulting and irritating, will not justify an assault and battery, and in an action for damages such provocation as may have been caused by the use of the words is to be considered only in mitigation of the damages.
On the other hand, it is contended on behalf of defendant that the jurisprudence is to the effect the plaintiff must be free from fault in order to recover damages for assault and battery, and the argument is advanced that the words the plaintiff used were extremely abusive and constituted sufficient provocation for the assault, and accordingly he is not entitled to a recovery.
No resort to the jurisprudence upon which each party relies need be made. Suffice it to say our opinion is that there was no justification for defendant’s attack and ■he is liable for such damages as may have been the result. There were only two disinterested witnesses, namely, Serpas and Olsen. Plaintiff and his witnesses are brother pilots and in addition to this defendant and Capt. Henry Vogt are brothers in the flesh. Serpas gave no testimony which could possibly assist the court in resolving the factual question presented and his statement that defendant asked plaintiff “Are you referring that to me” does not carry the ring of truth. It is strange that he heard nothing else. If the question had been asked if plaintiff *307 had replied to defendant’s question and an answer given thereto, it seems certain Ser-pas would have also heard the answer.
Olsen, the coast guardsman, appears to have been entirely disinterested. He had no possible connection with either the pilots or the employees of the Port Ship Service, and we agree with the trial judge that his testimony, although it was not given in court, is entitled to considerable weight. Olsen is now stationed at Port Isabel, Texas. What he said fully corroborates plaintiff and bears out that there was no excuse for the wanton attack made on Müller. Thus plaintiff’s version of the altercation is borne out by what seems to be the best evidence which emanated from the only disinterested witness.
By the record it is shown that plaintiff is a man 52 years of age, stands in height and weighs about 178 pounds; defendant’s age and physical condition are not shown, but is was conceded by counsel that he is in his forties and is of a well-proportioned physique. Under these circumstances, it is hard for us to believe that if Capt. Vogt had first accosted Müller about the remark that Müller would have pointed his finger at Capt. Vogt and answered “Yes, I mean you.”
In addition, a river pilot is held in high esteem and is treated with respect by a boat operator as in a military establishment. Pilots outrank the boat operators. Both plaintiff and defendant so agree. With this in mind we wonder if a boat operator would dare address a captain with the obscene words attributed to Müller.
Assuming for argument’s sake that Mül-ler, who was ouside, had called Capt. Vogt, who was inside behind the locked door, the vile name, we do not believe that it would be logical to hold that this would absolve Capt. Vogt from liability for the attack when plaintiff entered the room. But, at any rate, we feel reasonably certain that Müller did not direct the words at Capt. Vogt and that nothing was said or done by Müller after entering that would have been in justification of Capt. Vogt’s aggression.
Midler’s nose bled profusely. Capt. Henry Vogt was solicitous and said to plaintiff: “You need a doctor’s attention * * Both he and the defendant conveyed Müller to the Southern Baptist Hospital where he remained several hours. Dr. E. G. Walls saw him in the Emergency Room on the morning of the attack and his X-rays showed a fracture of the nasal1 bone and nasal septum, with dislocation of the nasal septum and Dr. Walls reduced the deformity under local anesthesia. He treated plaintiff on eleven different occasions thereafter or until February 25. Dr. Walls states he prescribed a nose guard and that some time during the period between January 14 and January 19 plaintiff,, while at work, neglected to protect himself with the nose guard and the septum was, again dislocated as the result of a bump, on the nose. The defendant’s present condition requires an operation, the cost of which is estimated at $250 or $300.
Dr. Walls when asked whether he could say that all of his treatment from January 11 up to the last time he saw Müller was for the first and original injury or whether it was for the injury caused by the subse--quent accident answered:
“It would be hard to separate the-two, since I was still treating him for the first injury when that came along.”
The defendant has already paid plaintiff’s, medical bills. No allowance should have been made for the cost of the future operation because we are not all sure that the operation is not required because of the subsequent accident rather than to Capt. Vogt’s blow. This would also be true ■ with respect to the headaches from which, plaintiff claims to now suffer.
Our conclusion is that an award-.' of $1,000 to Müller would be adequate and-1 fair remuneration for his humiliation, injuries and pain and suffering, and the- *308 judgment appealed from should be accordingly reduced.
For the reasons assigned, the amount of the judgment appealed from is reduced to $1,000 and affirmed. Plaintiff-appellee is to pay the costs of this appeal.
Amended and affirmed.