LOTTINGER, Judge.
This is a suit for personal damages filed by petitioner, William J. Dittmann, against Cedric M. Long, defendant, resulting from an alleged battery inflicted by defendant upon the person of petitioner. Petitioner claims damages in the amount of $9,880. The Lower Court awarded judgment in favor of petitioner and against defendant in the amount of $3,201.50. The defendant has taken a suspensive appeal, and the petitioner has answered the appeal, asking for an increase in the award.
The record discloses that this suit results from an alleged tort committed by defendant upon the person of petitioner on or about December 11, 1957. The evidence shows that petitioner and James A. Mercer are co-owners of the A.A.A. Retail Package Liquor Store situated on 13th Street in *45 the City of Lake Charles, Louisiana. They each owned a 50% interest therein. On the night of December 11, 1957, at approximately ten o’clock p. m., the petitioner received a phone call from his partner, James A. Mercer, during which Mercer advised petitioner that he would not drop the receipts for that day at petitioner’s other liquor store as was the usual custom. By the sound of Mercer’s voice, it was apparent to petitioner that Mercer had been drinking. It was the normal procedure for the A.A.A. Retail Package Liquor Store to close at approximately 9 o’clock each evening, and after said closing hour, Mercer would go to the other store owned by petitioner and situated on Hodges Street where he would hand all the day’s proceeds to the petitioner.
On the evening in question, a drinking party had been held in the A. A A. store which continued after the normal dosing hour. Present during this drinking party were Mercer, Cedric M. Long, the defendant, Frank Guilbeau, J. B. Glenn, who owned a filling station next to the A.A.A. store, and Ralph Peet, a colored boy who worked for Mr. Glenn. From the maize of conflicting testimony which was adduced from the said parties, as well as the other witnesses, it appears that the drinking party began in the A.A.A. store at approximately 9 o’clock p. m., or shortly prior to that time. Frank Guilbeau testified that he appeared at the store and noticed that his friend, Mr. Mercer, had been drinking rather heavily, and so he took it upon himself to ask J. B. Glenn if he would have his colored helper, Ralph Peet, to assist him in driving Mercer home. Guilbeau returned to the store, followed a short time thereafter by Peet, and were apparently waiting around for Mercer to close up. Intermittently during the evening, J. B. Glenn and the defendant, Cedric M. Long, came into the store where they each had several drinks.
During a conversation which occurred between these parties it appears that Long suggested that he should buy out the petitioner’s interest in the store and make an automobile repair shop on the premises. In a telephone conversation with the petitioner prior to the alleged battery, Long told petitioner that the liquor store was not stocked correctly and told him to come down to the store and he would give him a check to buy the place out. It is not clear whether this telephone conversation between Long and petitioner took place when Mercer had called petitioner to tell him that he would not drop the .receipts that evening, or whether Long had made a subsequent call to petitioner.
Nonetheless, at approximately 11 o’clock p. m. that evening, petitioner closed his other liquor store, and he and his helper, Buster Mahon, went to the A.A.A. store in petitioner’s pickup truck. Mahon remained in the truck while petitioner, carrying his money bag under his right arm, entered the store. Of course, the petitioner was highly incensed prior to entering the store because the business was merely a retail package liquor store, and under Louisiana law, a drinking party was not supposed to take place in such an establishment.
Upon entering the store, an argument commenced between petitioner and Mercer, into which it appears that defendant injected himself on several occasions. The testimony is that Mercer threw the money bag containing the day’s receipts at petitioner’s feet, together with the keys. At about this time, petitioner contends that he commenced to back toward the phone to call the police when defendant ran up to him and struck a violent blow to the face, knocking petitioner to the floor. The defense is to the effect that petitioner was approaching the defendant in a threatening manner when defendant struck him in self-defense.
Although the evidence is extremely conflicting as to who instigated the tort, the greater weight of evidence rests upon petitioner’s side of the case. The argument was between petitioner and his part *46 ner, and the evidence discloses that on several occasions the defendant entered into this argument. Certainly the petitioner had a legal right to be highly incensed at the action of the parties in drinking in his establishment which was strictly contrary to the .retail package liquor permit which had been issued to the said establishment. The preponderance of the testimony as found by the Lower Court was to the effect that the blow by defendant was not in self-defense and that the petitioner was not guilty of inciting the tort. We are certainly unable to find any error whatsoever in the said ruling by the Lower Court, as all the parties were present in the Lower Court, and said Court was in a much more favorable position in evaluating their testimony than we are. Subject to the objection by petitioner’s attorney, the Lower Court let in evidence tending to show justification of the offense. Later, in its written opinion, the Lower Court ruled that under a general denial to a suit for assault and battery the defendant may show provocation only in mitigation of damages and not as a defense to the suit. Caspar v. Prosdame, 46 La.Ann. 36, 14 So. 317; Turnbow v. Wimberly, 106 La. 259, 30 So. 747, and Capdevielle v. Christina, 3 La. App. 455. Thus the ruling of the Court was to the effect that justification for the assault and battery is an affirmative defense which must be affirmatively pleaded.
However, such a ruling is modified by the holding in Manuel v. Ardoin, La.App., 16 So.2d 72, 73. Therein the petitioner sued for damages for what was alleged in his petition as an illegal, unwarranted and unprovoked attack upon his person. The defendant’s answer was a general denial. Upon trial of the matter, petitioner objected to any testimony on the part of defendant, tending to show provocation, on the grounds that such evidence would tend to enlarge the pleadings as the defense was based solely on a general denial. In support of its contention, the holding of Caspar v. Prosdame, supra, was cited by petitioner. The evidence was admitted over the objection by petitioner. In that case the Court held that insofar as the petition alleged that the attack upon petitioner was “unwarranted and unprovoked”, and that such allegation was denied by the answer of defendant, that the question was clearly before the Court and that defendant could offer testimony to show provocation. In so holding, the Court distinguished Caspar v. Prosdame, supra.
Similarly, in the present case plaintiff alleged that defendant struck him “without cause or provocation” (Art. 5) and that “said attack was malicious and without justification of any kind” (Art. 6), which allegations were met by defendant’s general denial. Under the holding in the Manuel case, above cited, the question of provocation as a defense was thereby put at issue sufficiently to admit evidence of provocation for a defense and not merely by way of mitigating the damages.
There is also a rule of law in our jurisdiction to the effect that provocative words alone may be pointed out as a justification of the battery, provided these words were such that under the circumstances 'they should reasonably be expected to produce physical retaliation. Smith v. Parker, La.App., 59 So.2d 718.
Now, the'record unquestionably discloses that petitioner was a partner in the package liquor store on 13th Street. He and his partner, Mercer, had a license to operate a package liquor store which is a Class B retail liquor permit under LSA-R.S. 26:71. Under this permit, the serving of unpackaged liquor on the premises is prohibited, and, for such action, the owner’s permit may be revoked or suspended.
Naturally, upon entering the store the petitioner was greatly displeased with his partner, Mercer, for permitting drinking in the premises.
The evidence discloses that certain curse words passed between petitioner and *47 his partner. The preponderance of the evidence is to the effect that although petitioner and Mercer did direct obscene language toward each other, the petitioner did not use such language toward the defendant. It appears to this Court that the defendant was attempting to enter into an argument which did not concern him one bit, and about which petitioner was very much disturbed because of the possibility of losing his package liquor license. The preponderance of the creditable evidence, in our opinion, justifies the decree which was entered below, and we are certainly unable to find any error therein. The evidence does not show justification on the part of defendant.
Dr. Crookshank, who treated petitioner for the injury, testified on his behalf. He testified that as a result of the blow, petitioner received a cut directly below the right eye, which was approximately one and one-fourth inches in length, as well as a fracture of the nose. He testified that the injury was a very painful one, and it was necessary to remove a piece of skin from the cut under the eye. Eighteen stitches were required to close the cut. Dr. Crookshank testified that he saw petitioner ten times in addition to an examination just a few days prior to trial. He stated that petitioner suffered great pain for a period of four to eight weeks, and that a minimal scar under the eye will remain with bagging of the lower eyelid. Dr. Crookshank further testified that as a result of the broken nose the petitioner’s nose deviates towards the left, and that corrective surgery should be undertaken to the nose which would cost from $500 to $700.
Petitioner submitted into evidence the following bills: Dr. Warshaw, for X-ray, $10; Dr. Schneider, an orthopedist, and Dr. Traupt, who each saw petitioner on one occasion, $15; Dr. Crookshank $156; emergency room at St. Patrick’s Hospital $20.50; therefore, the total medical and hospital bills to date are in the sum of $201.50. Petitioner claims further future medical and hospital bills and surgery to the nose in the amount of $700, pain and suffering $4,000, permanent cosmetic dis-figuration and deformity to face $4,000, and mortification and humiliation $1,000. As to' the award given, the Lower Court held petitioner to be entitled to the sum of $3,000 to cover future medical bills, as well as pain and suffering, disfiguration and humiliation. It also awarded the sum of $201.50 as actual past medical bills, or a total award of $3,201.50.
The question of the proper amount to be allowed for pain and suffering, humiliation and disfigurement always presents a great amount of difficulty, however, it is the practice to be guided by other decisions which have been rendered in similar cases.' In Schwandt v. Nunez, La.App., 71 So.2d 583, 587, the petitioner was awarded judgment in the amount of $1,000 for superficial injuries consisting of contusions to the face, particularly around the eyes and lips, scratches on both arms and the loss of three teeth which were replaced by a denture. Said award included medical expenses of $100. We feel there is no question but that in the present case the injuries to petitioner were more serious than they were in the Schwandt case.
In Miller v. Vogt, La.App., 94 So.2d 304, the petitioner received a fracture of the nose with dislocation thereof. Prior to the trial, petitioner bumped his nose while at work, and there was some question as to whether this increased the injury thereto. The Court awarded $1,000 damages for humiliation, injuries, pain and suffering. In that case there was testimony to the effect that future medical expenses would be required in the amount of $250 to $300, although the opinion contains no reference to the actual medical expenses which were paid by the petitioner. It also appears to this Court that the petitioner in the present case received more substantial injuries than were present in the Miller case.
Dr. Crookshank testified that petitioner received a laceration immediately *48 below the right eye. A piece of skm went through all three layers of the skin into the muscle of the lower lid and cheek which was required to be removed. The skin was freed from the base of the nose to the eye so as to get enough free skin to close this defect. Dr. Crookshank testified that the laceration of the skin which was large, plus the fracture of the nose, were very uncomfortable and painful. In addition to the medical bills which were proved upon trial, Dr. Crookshank testified tha.t future medical treatment for repair of the nose would cost from $500 to $700. As a result of the injury, petitioner will carry a scar under the right eye with a bagging of the lower eyelid. We do not find any error in the amount awarded below.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by defendant.
Judgment affirmed.