LOTTINGER, Judge.
This is a suit in tort resulting from an automobile accident between an automobile owned and driven by Dr. Moss M. Banner-man and an automobile driven by John Judd Litchy. Dr. Bannerman sues on behalf of himself, and for the use and benefit of his minor son, Bruce Bannerman. Joined with him as petitioners are Mrs. Camile Bannerman and Chloe Dixon, who were riding in the automobile with him. The defendants are John Judd Litchy and The St. Paul Mercury Indemnity Company, the latter being the liability insurer of a Garage Liability Policy issued to M. W. Litchy, doing business as The Hi-way Motor Company of Sauk Centre, Minnesota. The Lower Court awarded judgment in damages to all petitioners except the minor son of Dr. Bannerman, and the defendant, St. Paul Mercury Indemnity Company, has taken this appeal.
The record discloses that the accident in question occurred in the Parish of East Baton Rouge, Louisiana on Tuesday, July 5, 1955. Dr. Bannerman was driving his 1953 Chevrolet sedan automobile in a northerly direction on Highland Road in Baton Rouge and the Litchy automobile was being driven in a westerly direction on West Roosevelt Street. Neither vehicle was brought to a stop prior to entering the intersection, and when the Bannerman car had reached a point where the front end was approximately opposite the north boundary line of West Roosevelt Street, it was struck on the right side by the 1950 Ford sedan operated by defendant Litchy. The accident occurred at approximately 9:30 o’clock P.M., and all vehicles had their headlights burning.
The suit was filed by petitioners alleging that the accident was the result of negligence on the part of the defendant driver. Defendant Litchy was never cited, however, St. Paul Mercury Indemnity Company filed an answer denying any negligence on the part of defendant Litchy, alleging contributory negligence on the part of Dr. Bannerman, and further denying that its insurance policy covered John Judd Litchy, or the automobile he was driving, at the time of the accident.
The record discloses that defendant Litchy and his family moved from Minnesota to Baton Rouge during the month of May, 1955. He and his family first lived with his sister in Baton Rouge, and, at the time of the accident, had moved to *169 an apartment. During the period from May, 1955 until December of 1955 Litchy was employed by the Prudential Insurance Company as a life insurance salesman. He used the automobile in question in his said employment. During December of 1955 he went to work for Dun and Bradstreet in Baton Rouge where he remained until May of 1956 when he was transferred to the Grand Rapids Minnesota Office of Dun and Bradstreet.
The plaintiffs claim that the automobile driven by Litchy at the time of the accident was still owned by M. W. Litchy, doing business as Hi-way Motor Company. The record discloses, however, that prior to the time that John Litchy left Minnesota to come to Baton Rouge the title of this automobile was transferred into his name, although it is contended that the transfer was simply for the purpose of convenience. It is claimed by plaintiffs that no consideration passed for the transfer of title, and that the title was transferred solely for the purpose of avoiding any difficulties with the police officials of other states by virtue of Litchy driving an automobile not owned by him. Young Litchy contends that his purpose in taking this automobile to Louisiana was to attempt to sell it.
The insurance policy in question is a Garage Liability Policy issued to M. W. Litchy, doing business as Hi-way Motor Company. This policy of insurance was taken out by M. W. Litchy as a dealer in new and used automobiles as protection for him in connection with the operation of his business. The pertinent portions of this policy, for the purposes of this suit, are as follows:
"I. COVERAGE A — BODILY INJURY LIABILITY
“To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.”
The policy then provides for the hazards that are covered by the policy and they are three in number:
Division 1 — PREMISES—OPERATIONS — AUTOMOBILES
The specific language in the policy is as follows:
“The ownership, maintenances or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for nonbusiness purposes of (1) any automobile owned by or in charge of the Named Insured and used principally in the above defined operations, and (2) any automobile owned by the Named Insured in connection with the above defined operations for the use of the Named Insured, a partner therein, an executive officer thereof, or a member of the household of any such person.”
We are interested here, of course, only in “Automobiles” since this accident is not related to the premises nor the operations of the Hi-way Motor Company.
The definition of “Insured” is covered in Paragraph III of the policy; and it provides therein as follows:
“III. DEFINITION OF INSURED
“With respect to the insurance under Coverages A, B and D the unqualified word ‘Insured’ includes the Named Insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial in *170 terest in the business of the Named Insured covered by this policy, and (2) any person while using an automobile covered by this Policy, and any person or organisation legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or with his permission * *
From the wording of the policy it appears to be clear that the petitioners must prove not only that the car driven by Litchy was owned by the Hi-way Motor Company and was being driven with the permission of the owner, but also that it was “an automobile covered by this policy”. If we refer to the definition of Hazards to determine what automobiles are covered, we see that insofar as John J. Litchy or this car is concerned, it could only possibly fall under “(2) any automobile owned by the Named Insured in connection with the above defined operations for the use of the Named Insured, a partner therein, an executive officer thereof, or a member of the household of any such person.” As John J. Litchy was not a “partner”, nor an “executive officer”, if he is to qualify under the policy he must be a “member of the household of any such person”. Although the record does disclose that John J. Litchy did at one time work for the Hi-way Motor Company, on April 11, 195S title to this automobile was registered in his name and shortly thereafter he moved to Baton Rouge with his family and got a job selling insurance for the Prudential Life Insurance Company. He continued to work for this insurance company as a salesman using the car in question until he wrecked it in the accident on July 5, 19SS. At the time of the accident he and his family were residing in an apartment in Baton Rouge, and his father and his family were residing in the State of Minnesota. Subsequent to the accident, John Litchy continued to work as a salesman for the Prudential Life Insurance Company until December of 1955 at which time he went to work with Dun and Bradstreet.
It is apparent from the above recited facts that this automobile was not “an automobile covered by this policy” because even conceding that John Litchy merely took title to this car for the sake of convenience and that his father still owned it, there is not any proof whatsoever in the record that he was a member of the household of his father at the time of the accident, or that the car was being used “in the above defined operations”. Petitioners make much of the fact that under the definition of “Insured” there is the usual provision about the car being used by the Insured “or with his permission.” They, along with the Lower Court, overlooked the fact that in a Garage Liability Policy it is provided that “Insured” means “an automobile covered by the policy”.
We do not believe that there can be any doubt that John Litchy was not a member of his father’s household at the time of the accident. Black’s Law Dictionary defines “household” as “A family living together” * * * “those who dwell under the same roof and compose a family”. In Leteff v. Maryland Casualty Company, La.App., 91 So.2d 123, this Court was concerned with determining the meaning of the phrase “member of household”. In that case, on Page 130, we stated as follows:
“Whether the term ‘household’ or ‘family’ is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a ‘collective body of persons living together within one cur-tilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interest and social happiness.’ ”
We do not believe that by any stretch of the imagination that John Litchy could be considered a member of his father’s household in this particular case. Considering the above, it is not necessary that we determine the ownership of the automobile *171 driven by John Litchy at the time of the accident.
For the reasons hereinabove assigned, the judgment of the Lower Court will be reversed, and there will be judgment in favor of defendant, St. Paul Mercury Indemnity Company and against petitioners dismissing petitioners’ demand, all costs of this appeal to be paid by petitioners.
Judgment reversed.