The plaintiff brought this suit against the defendant and its insurance carrier to recover the maximum amount of compensation, plus medical expenses, on account of total permanent disability which he claims resulted from an accident in the latter part of November, 1943, while he was working for the defendant, Mathieson, Alkali Works, Inc. He claims that on the second day after he had begun work for this employer, he inhaled an excessive amount of chlorine gas, which resulted in injury to his respiratory organs and caused heart trouble, which has totally disabled him from doing the kind of work he was doing when injured, that of a steam fitter.
The defense is based on three principal grounds: viz, that there was no accident, that plaintiff's condition has no causal connection with the alleged injury, and defendants deny that he is totally and permanently disabled.
The trial judge rendered a judgment in favor of the defendants and rejected plaintiff's demands. He has appealed.
On the question of whether or not there was an accident within the contemplation of the Workmen's Compensation Law, the testimony shows that the place where plaintiff *Page 719 
was working was in and around what is called the acid recovery room or cells of defendant's plant. The evidence further shows that considerable gas fumes were present in and about these rooms to the extent that many of the workmen would have coughing spells, smarting in their eyes, nausea and other symptoms caused from the inhalation of the poisonous gas. The evidence clearly shows that during the day several of these employees would report to the first aid station complaining of these symptoms, and would be given first aid treatment after which they usually went back to work. There is no question but that an unusual amount of this chlorine gas would produce clear symptoms of coughing, throat irritation, nausea and sometimes would prevent an employee from returning to his work for several days.
The evidence shows that plaintiff did inhale a quantity of this poisonous gas on the last day that he worked for this employer, but there is considerable dispute as to what reports he made to the first aid station and the company doctor, as well as the nature and extent of the symptoms resulting from his inhalation of the gas.
Plaintiff testified that on the second day of his employment he was directed to work on a tower where the gas fumes were bad; that he was working on a pipe and gas was leaking from an overflow tower near him; that he was about 10 feet above the overflow of gas and it drifted up to him. He says the gas hurt his throat, and caused a burning in his chest and affected his breathing; that he became nauseated, and could not eat his lunch; that the gas made tears come in his eyes. He states that he stayed on the job the rest of the day and that night he spit up considerable blood. He is corroborated in his statement of spitting up blood that night by his wife and daughter. Other than the fact that the employees working around this area saw that plaintiff was affected by the gas, he is not corroborated in his statement that there was an unusual amount of gas escaping from leaking pipes below the place where he was working.
Shortly after this occurrence, plaintiff went to see some doctors and they diagnosed his trouble as being chronic bronchitis and a skip in his heart beat, which the doctors thought would render plaintiff unable to do hard work.
[1, 2] If the statement of plaintiff to the effect that there was an unusual amount of this poisonous gas which escaped just below where he was working is to be accepted there is good grounds to hold that he suffered an accident within the meaning of the compensation law. The condition which he suffered could not be classed as an occupational disease if, as he states, this excessive inhalation of gas caused the results which he recites, particularly the spitting up of blood shortly after he was exposed to the escaping gas. An accident as defined in the Compensation Law, Section 38 of Act No. 20 of 1914, as amended, Act No. 38 of 1918, means an unforeseen or unexpected event happening, suddenly, or violently, with or without human fault and producing at the time objective symptoms of an injury. If plaintiff's account of the happening is true, the event was sudden, if not wholly unexpected, and produced objective symptoms of an injury. It was not a result produced over a long period of time by exposure to the gas fumes. Cannella v. Gulf Refining Co. of Louisiana, La. App., 154 So. 406; Glover v. Fidelity Casualty Co. et al., La. App., 10 So.2d 255; Collins v. Armour Co., Ltd., La. App., 11 So.2d 621.
[3] However, assuming that plaintiff did sustain an accident as he claims, the proof does not show that his disability, whatever it might be, was caused from the alleged accident. Practically every doctor who testified in the case was of the opinion either that his present condition was not necessarily traceable to the gas poison or that it was positively not so traceable.
Dr. Grigg, who was called by the plaintiff, testified that he first examined plaintiff on December 6th, a week or two after the alleged accident. He found a skip in plaintiff's heart beat, one out of every ten or twelve beats when he was quiet, and a skip out of every three or four beats on exercising. The doctor could find nothing in *Page 720 
plaintiff's throat, but could hear a little roughness in his bronchial tubes. Plaintiff did not have a good color, looking a little pale. The doctor examined plaintiff again in February following and found some improvement in his condition; color some better, and heart beat a little more regular, but there was still some roughness in his bronchial tubes. The doctor did not know if inhaling the gas fumes caused plaintiff's trouble but enumerated several things which could have caused the condition.
Dr. Lafargue, to whom plaintiff went for treatment shortly after the occurrence testified that he saw plaintiff six or seven times after November, 1943. This doctor found that plaintiff had chronic bronchitis and a skip in his heart beat which he did not think was necessarily connected with gas poisoning. He states that he has seen a lot of men with gas poisoning which caused a lot of misery but no serious results.
Dr. Watkins examined plaintiff two or three weeks after the alleged occurrence. He found the skip beat in plaintiff's heart and thought it would be unwise for plaintiff to do hard manual work, but he was positive in his opinion that plaintiff's condition was not caused by coming in contact with chlorine or other poisonous gas.
Plaintiff was examined once by Dr. Fisher in March, 1944, who found chronic bronchitis and a rapid heart beat, and this doctor was of the opinion also that the condition was not from a chemical origin.
Dr. Seale examined plaintiff about a year after the occurrence and found his principal trouble to be an enlargement of his heart, or myocarditis, with a rapid pulse beat, and this doctor expressed the opinion that plaintiff's condition was entirely of cardiac origin. Dr. McKinney took an x-ray of plaintiff's chest in March, 1944, which showed his lungs to be normal.
The strongest point in plaintiff's favor to the effect that the inhalation of gas might have caused the present condition is the fact that he had always worked regularly prior to that time and was examined before entering the employment of this defendant in November, 1943, and nothing wrong was found by Dr. Stevens, the examining physician. Some corroboration is also given to his claim that his condition resulted from the gas poisoning by the fact that the medical evidence shows that the inhalation of chlorine gas would irritate the respiratory passages and if the amount so inhaled is excessive, the result might be to seriously injure the membrane in these passages. However, these doctors claim that the effect of such irritation should pass off in a short time, leaving no permanent effects. From the medical testimony, it is apparent that whatever disability plaintiff now suffers is caused from his heart condition, and the medical testimony is unanimously to the effect that gas poisoning would not cause this kind of heart trouble.
[4, 5] As we have often said, a plaintiff in a compensation suit must make out his case with the same degree of reasonable certainty as is required in any other kind of suit. The burden rested on plaintiff to show with reasonable certainty that his present disability resulted from an accident sustained in the course of his employment. We think he has failed to show any causal connection between the alleged accident and whatever disability he may have. This conclusion renders it unnecessary for us to discuss the nature and extent of his claimed disability.
For the reasons assigned, the judgment appealed from is hereby affirmed. *Page 726