280 So.2d 291 (1973)
James JENNINGS, Sr.
v.
LOUISIANA AND SOUTHERN LIFE INSURANCE COMPANY.
No. 9416.
Court of Appeal of Louisiana, First Circuit.
June 20, 1973.
Rehearing Denied July 20, 1973.
Writ Granted September 21, 1973.
*292 Joseph E. Bass, Jr., Lake Charles, for appellant.
Herschel L. Abbott, Jr., New Orleans, for appellee.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
This appeal presents the res nova question of whether the ailment known as silicosis is an injury as distinguished from a sickness within the meaning of the terms contained in an insurance policy issued by defendant, Southern, to plaintiff. The policy provides for weekly benefits for total *293 disability in greater amount for disability resulting from injury than for disability caused by sickness. From the trial court's holding that plaintiff's admitted total disability from silicosis was caused by sickness, plaintiff has appealed. We affirm.
It is conceded that for several years prior to his contracting silicosis, appellant was employed as a sandblaster. While so employed, he was issued a policy of insurance by Southern on July 1, 1967. The policy provides that in the event of total disability, appellant would receive $50.00 weekly, commencing 180 days following the onset of disability. The contract also stipulates that for disability resulting from sickness, the payments would continue for a period of two years. In the case of disability from injury, payments would continue during disability until the insured attained age 65. During his employment, appellant was regularly given a quarterly physical examination, including X-rays. All such examinations proved negative, and appellant exhibited no symptomology until he consulted Dr. L. A. Cheramie of Morgan City, Louisiana, on August 21, 1967, for a cough and fatigue. Appellant was referred to Dr. Dennis M. Rosenburg, New Orleans, Louisiana, who, on September 13, 1967, diagnosed appellant's condition as silicosis and found appellant totally and permanently disabled. Defendant paid the specified weekly benefits for a total of 107 weeks aggregating the sum of $5,350.00. Payments were then terminated on the ground that appellant's condition resulted from sickness. It is conceded that appellant was not 65 years of age when defendant discontinued benefits.
The policy in question defines the terms "injury" and "sickness" as follows:
"INJURY means accidental bodily injury occurring while this Policy is in force.
SICKNESS means sickness or disease occurring while this Policy is in force." (Emphasis by the Court)
For reasons hereinafter particularized, appellant contends silicosis is an accidental bodily injury caused by a series of microtraumatic incidents or "insults" to the lung.
On the contrary, defendant maintains that silicosis is the result of bodily reaction to an ingested foreign matter and is therefore a sickness or disease within the contemplation of the applicable policy provision.
The issue was submitted on the deposed testimony of three medical experts, namely, Dr. J. M. Fernandez, Surgeon, and Dr. Hans Weill, Professor of Medicine, Tulane University (Specialist in Pulmonary Diseases and Internal Medicine) both of whom appeared for appellant, and Dr. John B. Bobear, Professor of Medicine, L S U Medical School (Specialist in Pulmonary Diseases and Internal Medicine), on behalf of defendant.
As correctly found by the trial court, the experts agree that silicosis results from inhalation into the lungs of microscopic particles of silica (silicon dioxide) which come to rest and agglutinate to the lining of the bronchial tree and air sacs. In certain persons, by reason of the host's individual makeup and bodily chemistry, part of which is immunological, allergic, part of which may result from generic differences in response to various adverse environmental influences, the silicon dioxide reacts chemically creating another compound or agent irritating to bodily tissues. Later the body attempts to reject the silicon dioxide, some of which is coughed up, the remainder being absorbed into the lymphatic or drainage system, the body's first line of defense. The lymphatics react to this irritant by swelling and becoming inflamed. The silicon dioxide then migrates to the lymph nodes (the glands at the terminus of the lymphatic vessels), the nodes too becoming irritated and inflamed. If the cleaning mechanism of the lymphatic system becomes overworked from constantly being called upon to combat the irritation, *294 it breaks down. When this failure occurs, the lymph nodes enlarge and thicken resulting in scar tissue or fibrosis. This condition ultimately leads to the formation of nodules (rounded lesions) composed of the effects and results of the inflammatory and fibrotic reaction. These nodules may then advance in stages and coalesce or grow together and become larger causing distortion of the lungs. In many patients the lungs become a mass of scars with the resultant loss of pulmonary function and eventual disability.
The experts are in total agreement as to the following: Silicosis is not caused by germs, bacteria or viruses as in the case of tuberculosis or pneumonia, but by bodily chemical reaction to the presence of silicon dioxide. The condition is progressive in nature in that it usually continues to worsen even when the patient suffering therefrom is removed from the polluted atmosphere. There is no known cure for the ailment. A person suffering from silicosis is more vulnerable to disease of any type, especially pulmonary disease such as pneumonia, because of lowered bodily resistance due to difficulty in breathing. The condition is not contagious. Only a small percentage of persons exposed to silicon dioxide become afflicted with silicosis. As among any number of persons so exposed, no prediction can be made as to the percentage which would succumb thereto. The number so affected depends entirely upon the amount of exposure and the individual bodily reaction to the presence of the foreign matter. A sandblaster is constantly exposed to an environment containing microscopic quantities of silica or silicon dioxide.
In contending silicosis results from "accidental bodily injury" as distinguished from "sickness or disease", appellant makes these basic arguments: (1) The infirmity is traumatic in origin in that it is caused by a series of micro-traumas or "insults" to the lungs when foreign silica particles lodge therein, which process directly and repeatedly inflicts injury to the lung tissues resulting in unexpected and unintended disability; (2) the condition is "accidental" in that, while it results from prolonged exposure to silican dust (silicon dioxide) and admittedly takes a prolonged period to develop, nevertheless, when disability occurs therefrom, its onset is sudden, unexpected and unintended comparably to injury suddenly occurring from a violent external force exerted upon a human body, and (3) silicosis is not caused by germs, bacteria or viruses as is usually the case in sicknesses or diseases such as pneumonia, tuberculosis, measles and other maladies ordinarily and commonly regarded as diseases.
Defendant maintains silicosis is a sickness or disease inasmuch as it is not traumatically induced, but is rather the result of individual bodily reaction to environmental conditions. Defendants also contend that even though silicosis is not caused by a germ, bacteria or virus, it is considered as a disease by the medical profession.
A contract of insurance, like any other contract, is the law between the parties thereto. LSA-C.C. art. 1901; Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238.
The rules established for interpretation of written agreements applies to insurance contracts. Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646.
Courts must give legal effect to the provisions of an insurance policy according to the true intent of the parties, which is determined by the wording of the policy when its provisions are clear and unambiguous and do not lead to absurd consequences. LSA-C.C. arts. 1901, 1945; Bunch v. Frezier, La.App., 239 So.2d 680.
The words used in an insurance contract are to be understood in their common and usual significance without attending so much to grammatical rules as to *295 general and popular use. LSA-C.C. art. 1946; Taylor, above; Harmon, above.
Any ambiguity in the language of an insurance policy must be construed favorably to the insured and adversely to the insurer. Graves v. Traders and General Insurance Company, La.App., 200 So.2d 67. However, this rule of strict construction does not permit perversion of policy language or the creation of ambiguity where none exists. J. M. Brown Const. Co. v. D. & M. Mechanical Contr., Inc., La.App., 222 So.2d 93.
Conceding silicosis resulted from the process above indicated, Dr. Fernandez, in summary, defined the condition as an abnormality caused by a chemical agent; "... a chemical reaction ... between the silica and the body alkalis and it produces an irritant to which the body reacts." He explained that the phenomena is an abnormal state produced by a normal body reaction to the presence of a foreign agent, the reaction being a bodily defensive or protective mechanism. As did all the experts, Dr. Fernandez also conceded that for unknown reasons, not all persons reacted thusly to the presence of silica in the lungs. Although he declined to categorize silicosis as a disease because he preferred the term "abnormality", Dr. Fernandez nevertheless conceded that it is not the trauma or "insult" to the lungs which causes silicosis, but rather the chemical reaction of some individuals to the presence of silica in their systems. He further conceded the presence of silica does not in itself cause silicosis, but that its onset depends entirely upon the individual bodily response thereto.
We acknowledge the extreme difficulty in determining whether a given state of health is the result of accidental injury or disease. Admittedly the line of distinction can be exceedingly fine from either a scientific or legal viewpoint. As noted in Connelly v. Hunt Furniture Company, 240 N.Y. 83, 147 N.E. 366, 39 A.L.R. 867, concerning a distinction between "accidental bodily injury" and "sickness and disease": "None perhaps is possible for the two concepts are not always exclusive, the one of the other, but often overlap." Notwithstanding the difficulty presented, we must determine herein whether silicosis is an injury or a sickness.
In Schonberg v. New York Life Insurance Company, 235 La. 461, 104 So.2d 171, our Supreme Court laid down a specific rule for interpretation of the word "accident" as used in insurance policies. In Schonberg, it was held that the term "accident" is to be construed in accordance with the common and usual significance attached thereto by general and public use... the test being whether the average person, under the circumstances, would regard the resulting loss so unforeseen, unexpected and extraordinary that he would say it was accidental. The term "accident" is not a technical one. Neither are the terms "bodily injury, sickness or disease". All are common words in ordinary usage. For this reason, we believe the "average man test" established in Schonberg equally applicable to the terms "accidental bodily injury" and "disease or sickness" as used in an insurance contract.
Of some assistance in this matter is the definition of "accidental bodily injury", appearing in 117 A.L.R., Insurance, secs. 651, 672, page 739, which reads in pertinent part, as follows:
"An accidental bodily injury has been defined as a `localized abnormal condition of the living body' directly caused by accident ....
In Burns v. Employers' Liability Assur. Corp. (Ohio) (reported herewith) ante, 733, the court states that the words `bodily injury' are commonly and ordinarily used to designate an injury caused by external violence, and are not used to indicate disease." (Emphasis by the Court)
In contending the incident does not constitute an accidental bodily injury, defendant *296 relies, to some extent, upon LSA-R.S. 23:1021(1) and (7) of the Louisiana Workmen's Compensation Law, which, respectively, define "accident" and "injury" as follows:
"(1) `Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of injury.
(7) `Injury' and `Personal Injuries' includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."
Appellant contends silicosis results from injury because it is caused by extraneous foreign matter producing repeated traumas on internal organs of the body, the effects of which appear suddenly and unexpectedly. In so contending, appellant maintains the definition of "accident" and "injury", as contained in our Workmen's Compensation Law, is not controlling herein. We agree the definitions alluded to are not decisive. We also agree with defendant's contention that these definitions may be of assistance in resolving the issue at hand.
Appellant cites and relies upon Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; Coots v. Southern Pacific Company, 49 Cal.2d 805, 322 P.2d 460; Young v. Clinchfield Railroad Company, 288 F.2d 499 (4th Cir.), all decided pursuant to the Federal Employers Liability Act. All said decisions hold that silicosis is not a disease within the meaning and intendment of the act in question. Those cases dealing with an act similar in scope to our Workmen's Compensation Law are no more decisive than our own statute.
Appellant also relies upon Carnes v. Continental Casualty Co., La.App., 212 So. 2d 441, in which our Second Circuit held that death resulting from a spider bite was accidental. In addition, appellant relies upon Murphy v. Travelers Ins. Co., 141 Neb. 41, 2 N.W.2d 576, which found that amputation of a dentist's hand because of the contraction of cancer due to exposure to X-rays was caused by accidental means. These authorities are distinguishable in that each deals with a foreign matter inherently and intrinsically dangerous to everyone.
We believe an average person generally regards accidental bodily injury as a personal injury resulting from either (1) an unexpected event occurring suddenly or violently, with or without human fault, causing at the time objective symptoms of injury, or (2) an event or series of events in which an inherently dangerous substance enters the body by external means or bodily process resulting in an impairment or modification of a vital bodily function. Applying this test to the case at hand, we find that an average person would not consider silicosis accidental bodily injury.
Concerning the issue of bodily injury as distinguished from disease, we note that defendant claims silicosis should be termed a disease because it is designated as an occupational disease pursuant to LSA-R.S. 23:1031.1, which is part of our Workmen's Compensation Law. We do not consider the statute controlling inasmuch as it defines silicosis as an occupational disease solely for the purpose of our Workmen's Compensation Law.
In response to the specific inquiry whether silicosis is an injury or disease, Dr. Fernandez replied the question was largely semantic. He repeatedly declined to designate the condition as either injury or disease, preferring instead to term it an "abnormality".
In numerous instances, Dr. Weill referred to silicosis as "... the disease which results from this chain of events....", and also as being a "disease", "a disease process", and "a deceased state". Although Dr. Weill did not expressly class *297 silicosis as a disease, the clear import of his testimony is that he does indeed consider the condition to be a sickness or disease.
Dr. Bobear was most emphatic that in ordinary medical parlance, silicosis is considered a disease. He explained that "Text books that we use to learn about this are text books of medicine, text books on pulmonary disease, text books on industrial medicine, where we consider that this is a disease rather than an accident or injury." He acknowledged also that the matter is one of semantics and expressed the personal opinion that silicosis is a disease.
We likewise reject appellant's contention that only such maladies as are caused by germs, bacteria or viruses may be classified as sickness or disease. Such a categorization would be patently absurd. It would eliminate from the category of diseases such common sicknesses as: (1) arthritis, perhaps the most common disease of all, the cause of which is unknown; (2) all forms of mental disease which are unassociated with germs, bacteria or viruses; (3) arteriosclerosis, and (4) heart disease.
In Webster's Third New International Dictionary, unabridged, 1963 Edition, we find the following definitions of disease and sickness:
"DISEASE: ... an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria or viruses), to inherent defects of the organism (as various genetic anomalies) or to combinations of these factors ...."
"SICKNESS: ... the condition of being ill, ill health; ILLNESS... a disordered, weakened or unsound condition ... a form of disease...."
The foregoing definitions of sickness and disease includes, among other conditions, impairment of the normal bodily state, or any bodily organs or components, which interrupts or modifies the performance of vital bodily functions, occurring in bodily response to an environmental factor or a combination of such factors. Because silicosis is not the result of any physical force or violence, produces no immediate sign of injury, acts wholly upon internal organs, takes an extended period to develop, and does occur solely as the result of unpredictable individual reaction to an environmental factor not inherently dangerous to all persons, we believe the average person would consider the condition a disease.
We hold, therefore, that appellant's disability is due to sickness or disease within the contemplation of those terms as used in the policy in question.
The judgment of the trial court is affirmed; appellant to pay all costs of these proceedings.
Affirmed.