290 So.2d 811 (1974)
James JENNINGS, Sr.
v.
LOUISIANA AND SOUTHERN LIFE INSURANCE COMPANY.
No. 53886.
Supreme Court of Louisiana.
February 18, 1974.
Rehearing Denied March 22, 1974.
*812 Joseph E. Bass, Bass & Lawes, Lake Charles, for plaintiff-applicant.
Herschel T. Abbott, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, for defendant-respondent.
DIXON, Justice.
The issue to be decided here is whether silicosis is a "sickness" or an "injury" under a disability income policy of insurance. The policy was issued by defendant to plaintiff, and stipulated that for disability resulting from sickness defendant would pay $50.00 weekly commencing one hundred eighty days following the onset of the disability and would continue for two years. In the case of disability from injury, however, the payments would continue during the disability until the insured reached age sixty-five.
On September 13, 1967 plaintiff, a sandblaster, was determined to be suffering from silicosis and was found to be totally and permanently disabled. Respondent paid the specified weekly benefits for one hundred seven weeks. Payments were then terminated on the ground that relator's condition resulted from sickness.
Jennings sued, seeking resumption of the weekly benefits. The trial court found in favor of defendant, holding that the disability was caused by sickness. The Court of Appeal affirmed. We granted certiorari.
The Court of Appeal found the following:
"As correctly found by the trial court, the experts agree that silicosis results from inhalation into the lungs of microscopic particles of silica (silicon dioxide) which comes to rest and agglutinate to the lining of the bronchial tree and air sacs. In certain persons, by reason of the host's individual makeup and bodily chemistry, part of which is immunological, allergic, part of which may result from generic differences in response to various adverse environmental influences, the silicon dioxide reacts chemically creating another compound or agent irritating to bodily tissues. Later the body attempts to reject the silicon dioxide, some of which is coughed up, the remainder being absorbed into the lymphatic or drainage system, the body's first line of defense. The lymphatics react to this irritant by swelling and becoming inflamed. The silicon dioxide then migrates to the lymph nodes (the glands at the terminus of the lymphatic vessels), the nodes too becoming irritated and inflamed. If the cleaning mechanism of the lymphatic system becomes overworked from constantly being called upon to combat the irritation, it breaks down. When this failure occurs, the lymph nodes enlarge and thicken resulting in scar tissue of fibrosis. This condition ultimately leads to the formation *813 of nodules (rounded lesions) composed of the effects and results of the inflammatory and fibrotic reaction. These nodules may then advance in stages and coalesce or grow together and become larger causing distortion of the lungs. In many patients the lungs become a mass of scars with the resultant loss of pulmonary function and eventual disability.
"The experts are in total agreement as to the following: Silicosis is not caused by germs, bacteria or viruses as in the case of tuberculosis or pneumonia, but by bodily chemical reaction to the presence of silicon dioxide. The condition is progressive in nature in that it usually continues to worsen even when the patient suffering therefrom is removed from the polluted atmosphere. There is no known cure for the ailment. A person suffering from silicosis is more vulnerable to disease of any type, especially pulmonary disease such as pneumonia, because of lowered bodily resistance due to difficulty in breathing. The condition is not contagious. Only a small percentage of persons exposed to silicon dioxide become afflicted with silicosis. As among any number of persons so exposed, no prediction can be made as to the percentage which would succumb thereto. The number so affected depends entirely upon the amount of exposure and the individual bodily reaction to the presence of the foreign matter. A sandblaster is constantly exposed to an environment containing microscopic quantities of silica or silicon dioxide." (La.App. 280 So.2d 291, 293, 294).
We agree with these determinations.
The policy in question defines injury and sickness as follows:
"INJURY means accidental bodily injury occurring while this Policy is in force.
"SICKNESS means sickness or disease occurring while this Policy is in force."
There are no relevant clauses in the "Exceptions and Reductions" section of the policy, but among the "Miscellaneous Provisions" there is the following clause:
"Concurrent Causes. Where sickness and/or injuries produce disability concurrently, a benefit will be paid as for a single cause of disability."
Webster's Third New International Dictionary (Unabridged) (1971), G. & C. Merriam Company defines:
"DISEASE: . . . an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects of the organism (as various genetic anomalies), or to combinations of these factors . . ."
"SICKNESS: . . . the condition of being ill: ill health: ILLNESS . . . a disordered, weakened, or unsound condition. . . a form of disease. . ."
"INJURY: An act that damages, harms, or hurts . . . hurt, damage, or loss sustained . . ."
Words used in an insurance contract are to be understood in the usual and common signification. C.C.1946; Harmon v. Lumbermens Mutual Casualty Co., 247 La. 263, 170 So.2d 646 (1965); Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939). Ambiguous coverage provisions in a policy are construed most favorably to the insured and against the insurer. Schonberg v. New York Life Ins. Co., 235 La. 461, 104 So.2d 171 (1958); Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1954); Mutual Life Ins. Co. of New York v. New, 125 La. 41, 51 So. 61 (1910). And, ". . . if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought *814 to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee." C. C.1958.
It may be true that silicosis is a disease. It is frequently called an industrial disease. It is a "sickness" and a "malady," and it is an impairment to the normal state of a living animal body that affects the performance of the vital functionsthe dictionary definition of disease.
But to find that silicosis is a disease does not compel the conclusion that it cannot also be an injury. Does silicosis not meet the definition of injury? It is a "damage or hurt sustained by a person;" it is a detriment, an impairment.
The policy does not warn the insured that he cannot recover the larger benefits for disability caused by "injury" if that "injury" is also a "disease." It could have excluded (from the greater benefit) disabilities from injuries that also meet the definitions of "disease."
"Injury" and "sickness or disease" are not mutually exclusive terms. Sickness (consider tetanus) may be caused by injury, or by disease, or by defect of birth, or by other causes. In Carnes v. Continental Casualty Co., 212 So.2d 441 (1968), for example, the Second Circuit Court of Appeal found that a spider bite was the injury, when though the immediate cause of death was a staphylococcus infection, and allowed recovery for "injury" under an accident policy.
The description of silicosis found by the Court of Appeal sounds more like a series of injuries than like a disease: grains of sand accidently inhaled stick to the lining of the breathing mechanism; a chemical reaction occurs and irritating compounds are formed; the lymphatic system, irritated and maimed beyond recovery, breaks down; scar tissue and fibrosis occur; nodules are formed in reaction; nodules coalesce and distort the lungs; the lungs, in turn, lose their function, disabling the victim.
Defendant refers to the workmen's compensation law definitions (R.S. 23:1021) and argues that silicosis is neither an accident nor injury thereunder:
"(7) `Injury' and `Personal Injuries' includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."
R.S. 23:1031.1 was added to the Louisiana workmen's compensation statutes in 1952. It includes silicosis as an occupational disease and provides the same benefits as for "personal injury by accident." This does not mean that what medicine has learned about silicosis would not now, under the jurisprudence that was developed in the workmen's compensation field, be considered an injury. Other ailments, previously held to be compensable as an "injury," are also included in the section on occupational disease. Although compensation was denied, chlorine (a halogen) poisoning was assumed to be compensable in Yaw v. Mathieson Alkali Works, Inc., 26 So.2d 718 (La.App.1946). Halogens are listed among the poisonings classified as an "occupational disease" in R.S. 23:1031.1, as is lead poisoning. Lead poisoning was held a compensable injury in Cannella v. Gulf Refining Co. of La., 154 So. 406 (La.App.1934). Sewer gas and ammonia poisoning was an injury under the act in Collins v. Armour & Co., 11 So.2d 621 (La.App.1942). The elements of both gases are included in the occupational disease section. Dermatosis from creosote and poison ivy was compensable injury in Woodward v. Kansas City Bridge Co., 3 So.2d 221 (La.App.1941). Dermatosis is listed as an "occupational disease."
Such examples demonstrate that the inclusion of silicosis in the occupational disease section (R.S. 23:1031.1) of the compensation *815 act does not mean that silicosis would not otherwise be an injury under the act and is not an injury under the policy before us.
It is not inappropriate to examine other workmen's compensation cases to determine whether silicosis is an "injury" under the Louisiana workmen's compensation act. In Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969) (and several other Louisiana cases), a plaintiff disabled with heart disease recovered compensation. In Ferguson v. HDE, Inc. 270 So.2d 867 (La.1973), a "stroke" was held to be a "personal injury by accident" and compensable. Heat stroke is a compensable injury. Warren v. Town of Winnfield, 38 So.2d 171 (La. App. 1949). Herpes zoster (shingles) was compensable in Glover v. Fidelity & Casualty Co., 10 So.2d 255 (La.App. 1942). A cancerous foot was compensable in Harris v. Southern Carbon Co., 162 So. 430 (La. App.1935). "Bends" suffered by a "sand hog" was an accidental injury in Taylor v. List & Weatherby Const. Co., 146 So. 353 (La.App.1933).
One compensation case from another jurisdiction is analogous to the case before us. In 1929 the Massachusetts Supreme Court held that pneumonoconiosis, or "granite cutters' disease," was a "personal injury" under the compensation act and not a disease. The language describing the ailment is remarkably like the description of silicosis:
"`. . . Sometimes he could not see it was so dusty. His clothes were full of dust at night. He used to blow the dust off at night with a hose.' He also testified to progressive weakness, shortness of breath and coughing. There was testimony from a physician that on examination of the employee there was found `a considerable amount of pneumonoconiosis, granite cutters' disease'; that there was `direct connection between the granite dust on his lungs * * * and his condition. * * * Pneumonoconiosis is the result of nature's reaction to fine particles of granite dust. Nature at first takes care of this granite dust by means of the lymphatics and for a good many years * * * can take care of it adequately and well, so that the system is not seriously injured.' Then `the lymphatics break down; they lose their function as filters and the granite dust is carried into the lung itself. Here nature forms what is its own protective reaction, scar tissue, around each tiny particle of granite and as this process goes on the man is literally choked to death; his breathing capacity becomes less and less.'
"This testimony was adequate to support the finding of the board that the employee was incapacitated by reason of a personal injury, as distinguished from disease, arising out of and in the course of his employment.
". . .
". . . In certain circumstances, however, disease may also be a personal injury within the meaning of the act. It was said in Burns' Case, 218 Mass. 8, 12, 105 N.E. 601, 603 (Ann.Cas.1916A, 787): `In common speech the word `injury,' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability.' In the case at bar there was evidence tending to show the tangible impact of particles of granite upon the lungs of the employee producing definite damage to his body." (Sullivan's Case, 265 Mass. 497, 164 N.E. 457).
We therefore conclude that silicosis is an "injury" under the policy provisions before us. There is no question of its accidental nature. See Ferguson v. HDE, Inc., supra.
For these reasons, the judgment of the courts below are reversed, and there is now judgment in favor of James Jennings, Sr., plaintiff, and against Louisiana and Southern Life Insurance Company, defendant, awarding disability insurance payments to plaintiff in the sum of $50.00 a *816 week beginning February 17, 1968 for the remainder of his life, but not beyond age sixty-five, subject to a credit for all weeks paid by defendant, with legal interest on all installments from their due dates until paid, and all costs.
SANDERS, C. J., dissents being of the opinion that the judgment of the Court of Appeal is correct. See 280 So.2d 291.
MARCUS, J., dissents and files opinion.
MARCUS, Justice (dissenting).
I agree with the conclusions of the courts below that plaintiff's disability from silicosis is due to sickness or disease within the contemplation of those terms as used in the policy herein. Accordingly, I respectfully dissent from the majority opinion.