**HOWARD, WEIL, LABOUISSE, FRIEDRICHS, INCORPORATED**

v.

**INSURANCE COMPANY OF NORTH AMERICA.**

Civ. A. No. 73–3238.

United States District Court,
E. D. Louisiana.

May 2, 1975.

Eugene R. Preaus, Edward J. Gay, III, Rutledge C. Clement, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for plaintiff.

Charles Kohlmeyer, Jr., Earl S. Eichin, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for defendant.

## OPINION

CASSIBRY, District Judge.

This is a suit by plaintiff, Howard, Weil, Labouisse, Friedrichs, Incorporated [hereafter Howard, Weil] against defendant, Insurance Company of North

America, [hereafter INA] under a Brokers' Blanket Bond issued by defendant to plaintiff. Under the bond INA was contractually obligated to indemnify Howard, Weil against any loss of money which Howard, Weil might sustain through any dishonest or fraudulent act or acts of any of Howard, Weil's employees, committed anywhere, and whether committed directly or by collusion with others, including loss of property through any such act or acts of any of the employees up to an amount not to exceed the stated limits of $400,000.00.

Howard, Weil seeks the recovery from INA of One Hundred Fifty-Four Thousand Four Hundred Five and No/100 ($154,405.00) Dollars together with legal interest, penalties, reasonable attorney's fees and all costs of these proceedings, as the result of losses sustained during the month of December, 1972, through the fraudulent and dishonest acts of Howard, Weil's employee, Jess Ben Latham, III, by his engaging in commodity transactions under false representations. Howard, Weil submitted to INA a Statement of Loss and a Verified Proof of Loss, which claim was denied by INA.

INA's defenses are that the loss was specifically excluded from coverage of the Bond relying on Section 1(e)(2) of the exclusion provisions; that Howard, Weil participated, acquiesced in, and through the use of its facilities made possible the acts of Latham; that Howard, Weil knew or should have known of Latham's financial inability to provide funds as to which Howard, Weil extended Latham credit; that Howard, Weil in receiving Latham's promissory note accepted it in full satisfaction of its claim; that Howard, Weil's claim includes commissions due to Latham not properly included therein; and that INA's refusal to pay Howard, Weil's claim was in good faith, after a full and complete investigation and in reliance on opinion of counsel and was not arbitrary, capricious or without probable cause. The Court, having heard the evidence and after due deliberation, now makes the following findings of fact and conclusions of law:

## Findings of Fact

1. Plaintiff, Howard, Weil, is a corporation organized and existing under the laws of the State of Louisiana, with its domicile and principal place of business in New Orleans, Louisiana. Defendant, INA, is an insurance company incorporated under the laws of the Commonwealth of Pennsylvania, with its domicile and principal place of business in Philadelphia, Pennsylvania. This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) in view of the diverse citizenship of the parties and the fact that the amount in controversy exceeds $10,000.00.

2. At all times pertinent to this case, Howard, Weil was the insured under Brokers' Blanket Bond No. 14, Bond No. S 628097, issued by INA.

3. From April 15, 1971, to December 14, 1972, Jess Ben Latham, III, was employed by plaintiff as a commodity solicitor and registered representative in its Amarillo, Texas branch office.

4. During his employment by Howard, Weil, Latham maintained a personal commodity account with Howard, Weil, referred to as a "house account".

5. On the morning of December 11, 1972, while in Chicago, Illinois, Latham secured the necessary authorization to go on the floor of the Chicago Board of Trade. Howard, Weil maintained a position on the floor, staffed by a girl with a Western Union Broad Bank Line to its home office. Normally orders were transmitted from the home office of Howard, Weil to its position on the floor where an order ticket would be written, and, thereafter delivered by messenger to a floor broker for execution. Upon execution, the order ticket would be returned to the girl at Howard, Weil's position on the floor for transmittal to the home office of Howard, Weil and ultimate confirmation to the customer. Initially, on December 11, 1972, Latham wrote out his own order tickets and ei-

ther gave them to the girl at Howard, Weil's position on the floor or directly to a runner who took them to a floor broker for execution. When the fact that Latham was writing his own order tickets came to the attention of the Howard, Weil personnel, Latham was instructed not to write his own order tickets. Thereafter, all of his tickets were written by the girl at Howard, Weil's position on the floor and executed in the usual fashion.

6. While on the floor of the Chicago Board of Trade on December 11, 1972, Latham placed orders for trades in soybeans, as follows:

| TIME PLACED | TIME EXECUTED | BUY | SELL | PRICE |
|---|---|---|---|---|
| 9:19 | 9:38 | 20M July | | 429½ |
| 9:38 | 9:42 | | 20M July | 426 |
| 11:42 | 11:47 | 40M July | | 426½ |
| 11:42 | 11:47 | 10M July | | 426¼ |
| 12:22 | 12:28 | | 50M July | 418 |
| 12:23 | 12:30 | | 50M July | 418¼ |
| 12:34 | 12:37 | | 70M July | 421¼ |
| 12:34 | 12:37 | | 30M July | 421½ |

In the trade of soybeans, 20M, as referred to in the first trade made by Latham, means 20,000 bushels, which is the equivalent of four contracts. The price quoted for the first trade, 429½, is $4.295 per bushel. When placing orders for his account, Latham was aware that he would have to pay Howard, Weil the required margin upon presentation of margin call the following day. As of the close of trade on December 11, 1972, Latham had bought and sold or "daytraded" 70 July beans, sustaining trading losses of $5,080.00 and had an open position of 150 July soybeans short.

7. On the morning of December 12, 1972, at approximately 8:00 A.M., Latham arrived at the New Orleans, Louisiana office of Howard, Weil, where he went to the office of Joe Christina, the employee of the firm who was in charge of the margin department. Among Christina's duties was the preparation of margin calls for all accounts in connection with the previous day's trades.

8. Latham was told by Christina that his margin call was $41,080.00, which included the loss of $5,080.00 on the day trades as well as the margin for his open position which was $1,200.00 per contract or $36,000.00.

9. Latham, at the time the margin call was made by Christina, issued his personal check, drawn on a checking account maintained with the American National Bank in Amarillo, Texas, in satisfaction of the call and delivered same to Christina. As of December 12, 1972, Latham's checking account with the American National Bank contained $590.29.

10. After the opening of trade on December 12, 1972, Latham continued to make transactions as follows:

| TIME PLACED | TIME EXECUTED | BUY | SELL | PRICE |
|---|---|---|---|---|
| 10:16 | 10:21 | | 150M July | 430 |
| 12:35 | 12:38 | 300M July | | 434½ |
| 12:37 | 12:40 | 150M July | | 434¾ |
| 12:37 | 12:40 | 150M July | | 434¾ |

The result of Latham's initial trade on December 12, 1972, was to increase his short position in July soybeans to 300 July soybeans short. Thereafter, he cov-

ered his open position by the purchase of 300 July soybeans, which resulted in a loss of $30,425.00. Latham entered two more orders and at the close of trade on December 12, 1972, had an open position of 300 July soybeans long.

11. The next day, December 13, 1972, Latham again returned to the New Orleans Office of Howard, Weil prior to the opening of trade. Latham issued his personal check, drawn on the American National Bank in Amarillo, Texas, wherein his account contained insufficient funds and delivered it to Christina.

12. Thereafter, on December 13, 1972, still in the New Orleans Office of Howard, Weil, Latham continued to trade as follows:

| TIME PLACED | TIME EXECUTED | BUY | SELL | PRICE |
|---|---|---|---|---|
| 9:58 | 10:11 | 300M Jan. | | 437 |
| 11:11 | 11:19 | 300M Jan. | . | 433 |

As of the close of trade on December 13, 1972, Latham had an open position of 300 July soybeans long and 600 January soybeans long.

13. On the morning of December 14, 1972, a margin call of $280,020.00 was made upon Latham, then in Amarillo, Texas, by telephone, by Miguel Uria, assistant to the head of the commodity department of Howard, Weil.

14. Uria telephoned Latham and asked how the margin would be met. Latham advised that stocks of his father would be sold to meet the call.

15. Uria checked to see if an order to sell stocks had been placed and found that no such order had been placed. Both Christina and Uria then spoke with Latham, who advised that the stocks were to be sold through another brokerage firm. Latham indicated that he thought the sale was for cash so the call could be met promptly and further indicated to Uria that stop orders had been placed to limit his losses. The transactions occurring as follows:

| TIME PLACED | TIME EXECUTED | BUY | SELL | PRICE |
|---|---|---|---|---|
| 10:17 | 10:28 | | 250M Jan. | 425 |
| 10:17 | 10:28 | | 350M Jan. | 424½ |
| 10:23 | 10:28 | | 150M July | 417½ |
| 10:23 | 10:28 | | 150M July | 417 |

Latham's losses as a result of the transactions concluded on December 14, 1972, were $118,900.00.

16. Shortly thereafter, Uria computed the losses of Latham and telephoned Latham to advise him. Latham agreed to round off the figures and to deposit $45,000.00 in the account of Howard, Weil, in Amarillo, which added to the checks previously given by Latham to Howard, Weil would make total payment in the sum of $154,485.00.

17. On December 15, 1972, Latham called and spoke to Uria and advised that stop payment orders were issued on the checks, that he had not made the deposit and that he wished to resign his position with Howard, Weil.

18. On December 19, 1972, while in Amarillo, Texas in connection with the closing of Howard, Weil's branch office, J. Alfred Levert, II, an employee of Howard, Weil, as evidence of Latham's indebtedness, secured from Latham a

demand note in the amount of $154,-405.00, Latham's total loss on the transactions in question.

19. Howard, Weil notified Hartwig Moss, III of the loss, who in turn advised INA. Howard, Weil sent INA a copy of Latham's demand note. Howard, Weil requested advice as to the disposition of the note, which advice was never received.

20. Howard, Weil, after submission of the Proof of Loss, cooperated fully with INA and complied with all requests by INA for information and/or documentation.

21. By letter dated March 2, 1973, INA denied the claim submitted to Howard, Weil for "lack of coverage."

22. At all times pertinent to this case the balance in the checking account on which the checks issued by Latham were drawn was never sufficient to cover the checks.

23. Latham concealed from Howard, Weil the fact that he did not have readily available funds to make required margin deposits and pay for losses in commodity transactions; that there were insufficient funds in this account to satisfy the checks issued by him; and, was further dishonest with Howard, Weil by inducing them to believe that he would deposit the sum of $45,000.00 to his account.

24. At no time pertinent to these proceedings did Howard, Weil intend to extend credit to Latham nor did it secure Latham's demand note as anything other than evidence of his indebtedness to Howard, Weil and the loss sustained by it.

25. As the result of the dishonesty or fraudulent action of Latham, Howard, Weil sustained a loss.

26. At the time of the termination of his employment, Latham was due in commissions $6,673.98, $4,193.48 of which were attributable to transactions other than those in question in these proceedings and $2,480.50 of which were attributable to the transactions in question in these proceedings.

27. The bond in question contains a rider which provides for a deductible of $35,000.00.

28. INA's refusal to pay the claim was not, as a matter of fact, arbitrary and capricious.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action and venue is properly laid in the Eastern District of Louisiana, 28 U.S.C. § 1332 (a)(1).

2. The Bond has the effect of law between the parties. LSA–C.C. Art. 1901.

3. Among the losses covered by the Bond was loss through any dishonest "fraudulent act of any of the Employees, committed directly or by collusion with others".[1] Coverage (A) Dishonesty, Brokers' Balnket Bond Form 14, No. S 628097.

4. Dishonest or fraudulent act is not defined in the Bond and, thus, is to be understood in its usual significance.[2] LSA–C.C. Art. 1946; Jennings v. Louisiana & Southern Life Insurance Company, 290 So.2d 811, 813 (La.1974).

5. Jess Ben Latham, III, at all times material, was an Employee of

1. "Employee" is defined in the bond as follows:
"Wherever used in this bond, Employee and Employees shall be deemed to mean, respectively, one or more of the Insured's officers, clerks and other employees employed by the Insured during the currency of this bond, and wherever located . . ."

2. Webster's Third New International Dictionary (Unabridged) (1971), G. & C. Merriam Company defines:

"DISHONEST: . . . characterized by lack of truth, honesty, probity, or trustworthiness or by an inclination to mislead, lie, cheat, or defraud . . ."
"FRAUDULENT: . . . belonging to or characterized by fraud . . ."
"FRAUD: . . . An instance or an act of trickery or deceit especially when involving misrepresentation . . ."

Howard, Weil, within the terms and conditions of INA's Bond. Mr. Latham's actions on December 11, 12, and 13, 1972, in placing orders, in giving checks on December 12, and 13, 1972, honoring margin calls made to him by Howard, Weil, and on December 14, 1972, promising to deposit the sum of $45,000.00 to the account of Howard, Weil, were those of an Employee within the terms of the Bond. The Bond specifically provided coverage for trading losses incurred as the result of the dishonest or fraudulent act or acts of an Employee. Maryland Cas. Co. v. First National Bank, 246 F. 892, 901 (5th Cir. 1918), cert. denied 246 U.S. 670, 38 S.Ct. 345, 62 L.Ed. 931 (1918).

6. Latham entered the trades on December 11, 12 and 13, in the expectation of profit or gain; made transactions in soybean futures without having readily available funds to satisfy margin requirements and pay for losses resulting from those transactions; gave checks to Howard, Weil on December 12, and 13, 1972, totalling $109,485.00, to honor margin calls made to him, knowing that there were insufficient funds in the account on which such checks were drawn to cover them, concealing that fact from Howard, Weil until December 15, 1972; misrepresenting to Howard, Weil on December 14, 1972, that a $45,-000.00 deposit would be made in its bank account in Amarillo, Texas, all resulting in a loss to his employer, Howard, Weil, all of which constitute dishonest and fraudulent acts within the terms and conditions of the bond. See Citizens State Bank v. Transamerica Ins. Co., 452 F.2d 199, 203 (7th Cir. 1971); and National Bank of Commerce in New Orleans v. Fidelity and Casualty Co. of New York, 312 F.Supp. 71 (E.D.La.1970), aff'd per curiam 437 F.2d 96 (5th Cir. 1971), cert. denied, 403 U.S. 906, 91 S.Ct. 2209, 29 L.Ed.2d 682 (1971).

7. Howard, Weil is entitled to recover from INA the sum of $112,731.-02 ($154,405.00 less commissions of $6,673.98 and the deductible of $35,000.-

00) together with legal interest from the date of judicial demand until paid and all costs of these proceedings.

## CONCLUSION

This case presents two major areas of difference between the parties as to the applicability of the bond. Specifically, it is INA's position that its policy does not apply to this situation because Mr. Latham was not acting in the capacity of an employee when the transactions in question took place and that Mr. Latham's actions were not dishonest or fraudulent since it was his intent to pay for the losses incurred.

I shall discuss the second contention first. There is no standard of dishonesty or fraud which does not include the behavior of Mr. Latham. In the course of human affairs intent cannot be determined directly but clearly the circumstances of this case demonstrate without doubt that Mr. Latham was dishonest in his relations with Howard, Weil. The use of his employer's funds in an attempt to make a personal profit and then the failure to repay the misappropriated funds upon losing them is clearly dishonest and fraudulent.

INA's contention that the actions of Mr. Latham were not those of an employee under the contract but rather those of an individual commodities purchaser is equally without merit. Mr. Latham was employed by Howard, Weil as a commodities dealer or broker. In that capacity he bought and sold commodities both for his customers and himself. All such transactions generated commissions for him and for his employer Howard, Weil. Therefore, whether the particular purchase was for himself or another is a distinction without a difference for the purposes of this bond. The bond was intended to cover commodity transactions engaged in by Mr. Latham involving Howard, Weil.

Under the circumstances and facts presented at the trial in this matter it is abundantly clear that Jess Ben Latham III was acting in the capacity

of a commodities dealer employed by Howard, Weil and that his activities in these various soybean transactions were dishonest and fraudulent.

In accordance with the above findings relative to commissions and the deductible rider, INA is ordered to pay Howard, Weil $112,731.02 plus legal interest from the date of judicial demand.

