121 So.2d 329 (1960)
B. N. McINNIS et al.
v.
J. W. TERRY et al.
No. 5034.
Court of Appeal of Louisiana, First Circuit.
May 31, 1960.
Rehearing Denied June 29, 1960.
*330 Wood & Jackson, Leesville, for appellant.
Pickett & Pickett, Many, for appellee.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge and Hoc.
This is a tort action instituted by the Reverend B. N. McInnis, individually, and on behalf of his minor son, William Joseph McInnis, against J. W. Terry and Hubert Westmorland, resulting from an altercation which occurred on the night of October 24, 1958, at the Marion High School Stadium in Calcasieu Parish, Louisiana, between the minor son of B. N. McInnis, William Joseph McInnis, and John Wesley Terry and Jerry Westmorland, minor sons of defendants.
For a cause of action, plaintiff alleged that on the night mentioned above that a football game was played at the Marion High School Stadium between Leesville High School and Marion High School. Petitioner's son was a member of the Leesville High School band. During the half time intermission of said game, his minor son left his seat in the stadium and went to retrieve a horn and bell, and that as he returned to his seat that he was met by John Wesley Terry and Jerry Westmorland; that his passageway was blocked by both minors named above, at which time he was brutally assaulted by John Wesley Terry who struck petitioner's son in the mouth causing certain physical injuries, as will be discussed later.
Petitioner alleged further that the assault and battery were wholly unprovoked and without cause, and asked for an in solido judgment against the fathers of the two minors named herein.
To this suit Hubert Westmorland, father of Jerry Westmorland, filed a general denial. The attorney for J. W. Terry, father of John Wesley Terry, stated that William Joseph McInnis, without any cause or provocation, struck John Wesley Terry a hard blow on the back of the head with a cowhorn, which blow caused considerable pain and discomfort to Terry for several minutes thereafter; that immediately after striking John Wesley Terry, William Joseph McInnis left his seat in the stadium, went to the bottom of the stand, and then immediately returned; that upon the return of William Joseph McInnis to his former seat, John Wesley Terry told him that he had better not strike him again. Upon being told this, William Joseph McInnis attempted to strike Terry again with the horn, and that Terry, being in fear of being struck again and still smarting from *331 the first blow, struck William Joseph McInnis on the face with his fist; that Terry struck McInnis one time only and only for the purpose of defending himself against being struck the second time by the said McInnis; that McInnis was the aggressor in the difficulty all along, having provoked said difficulty, and that since Terry was not the aggressor that the demands of plaintiff should be dismissed.
On these issues the case was tried, and at the termination thereof, the attorney for Jerry Westmorland filed an exception of no cause of action and no right of action. Counsel for John Wesley Terry filed an exception of no cause of action. The lower court overruled all of the exceptions filed by defendants and rendered judgment in favor of plaintiff individually and on behalf of his minor son, and against defendants in solido in the sum of $2,724, $324 being for medical expenses incurred by the said plaintiff herein, and $2,400 for loss of teeth, damage to the minor son's lips, pain and suffering, embarrassment and humiliation.
From this judgment both defendants have appealed.
Plaintiff, through his attorney, answered the appeal asking that the award be increased.

On the Exceptions
The Court will first discuss the exceptions filed by defendants for the reason that if these are good, it would settle the issue without having to go into the merits of said case.
The evidence discloses that on the night in question young McInnis had gone to Lake Charles as a member of the Leesville band. He played the trombone in said band. Leesville High School was playing Marion High School a football game. At half time young McInnis went to retrieve a so called cowhorn which had fallen to the ground from the stands above, and that as he walked back, he was stopped by young Terry and asked by Terry if McInnis had hit him with said horn. McInnis stated that he had not. Then Terry asked young Westmorland if McInnis was the one that had struck him and Westmorland said "Yes". Immediately thereafter, Terry struck McInnis in the face with his fist, and as a result thereof, McInnis lost three front teeth and received a cut on the upper and lower lip.
The writer of this opinion has been at the Marion High School Stadium on several occasions. It is of wooden construction. The seats are flat without any support, thereby leaving space on each row wherein objects may fall to the ground.
The lower court concluded that Terry and Westmorland were not telling the truth and that the attack by Terry was unwarranted, and he also held that Jerry Westmorland had encouraged Terry in his unlawful act and held the father of both minors liable in solido.
The exceptions filed by counsel for defendant on behalf of Hubert Westmorland are on the basis that the plaintiff's petition does not state that Jerry Westmorland was living with his father at the time of the incident in the case at bar. The exceptions filed by counsel for J. W. Terry are in part similarly based. In support of their proposition, they cite Article 2318 of the LSA-Civil Code. This article provides the following language:
"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
"The same responsibility attaches to the tutors of minors."
Although it is the better practice to do so, the trial court held that, since as a matter of law the residence of an unemancipated minor is that of his father unless changed in some manner provided by *332 law, it was not necessary for the plaintiff to allege and prove that the defendants' minor sons were residing with them at the time of the tort, since this is a matter to be urged as a defense to the action. Toca v. Rojas, 152 La. 317, 93 So. 108. We think that under the cited decision by our Supreme Court the ruling is correct. Simmons v. Sorenson, 71 So.2d 377, relied upon by the defendants-appellants, simply concerns an instance where the defendant successfully urged and proved by way of defense that parental authority over the minor in question and, consequently, parental responsibility for his torts had been suspended since the minor had been inducted into the national military service.
In addition, evidence admitted without objection at the trial proves explicitly in the case of young Westmorland and strongly indicates in the case of young Terry that these teenagers were living with their parents.
As an additional ground for the exception of no cause and right of action leveled on behalf of J. W. Terry, his counsel stated that plaintiff did not allege a cause of action for the reason that John Wesley Terry was the adopted son of J. W. Terry, and that under the specific provisions of Article 214 of the LSA-Civil Code, as amended by Section 1 of Act 514 of 1958, the adoptive parent cannot be held responsible for the torts of his minor son, John Wesley Terry.
Article 214 of the LSA-Civil Code of Louisiana, as amended by Section 1 of Act 454 of 1948 provides as follows:
"The adopted and his lawful issue and the adopter shall have the same rights and shall be subject to the same duties and legal incidents towards each other as if the adopted were the legitimate child of the adopter. The adopted and his lawful issue have the same rights as legal and forced heirs to the succession of the adopter as his legitimate children. Also, except as provided in Article 214.7, the adopter has the same rights to the succession of the adopted and his lawful issue as if the adopted were his legitimate child."
This article was amended in 1958 by Section 1 of Act 514 of 1958, which provides as follows:
"Married persons must concur in the adoption of another person. One of them cannot adopt without the consent of the other.
"The adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent or parents, including the right of the adopted person or his lawful descendants to inherit from the adoptive parent or parents or the relatives of the latter by blood or by adoption, and the right of the adoptive parent or parents or the relatives of the latter by blood or by adoption to inherit from the person adopted or his lawful descendants, in the same manner and to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent or parents.
"If the adoptive parent is married to a blood parent of the adopted person, the relationship of that blood parent and his blood relatives to the adopted person shall remain unaltered and unaffected by the adoption. Otherwise, upon adoption: the blood parent or parents and all other blood relatives of the adopted person are relieved of all of their legal duties and divested of all of their legal rights with regard to the adopted person, including the right of inheritance from the adopted person and his lawful descendants; and the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them."
*333 It is the contention of counsel for Terry, and he has submitted an elaborate brief in support of his proposition that since the adoption of the 1958 amendment of Article 214, that the father can no longer be held responsible for the torts of his adopted minor son.
All of the cases cited by counsel for defendant were decided before the provisions of Act 514 of 1958 were enacted.
It will suffice to say that under the plain provisions of Article 514 of 1958, an amendment to Article 214 of the LSA-Civil Code of Louisiana, which read in part "* * * the adopted person is considered for all purposes as a legitimate child and forced heir of the adoptive parents * * *", it appears to the Court that this provision of the law is all inclusive and that the adoptive parent is responsible for the tort committed by his adopted son, for if it were not so, a minor son could commit torts at will without any civil responsibility attaching to anyone. If the contention was maintained, it would not be possible to hold the adoptive parent or the natural father for any torts committed by him.
For the reasons outlined herein, the exception of no cause of action filed on behalf of J. W. Terry is hereby overruled.

On the Merits
After reading the testimony carefully, together with the briefs prepared by counsel for all parties, and the opinion of the trial judge, it appears to the Court that prior to the night in question, William Joseph McInnis did not know John Wesley Terry or Jerry Westmorland, and that if he did, the acquaintance was slight, and further that the three minors named herein had never had any trouble before.
Young McInnis never did fully explain how the horn happened to drop to the ground. It appears to the Court that the cowhorn was dropped accidentally and that it did strike John Wesley Terry, however, the Court does not believe that William Joseph McInnis was the aggressor in the affray. However, conceding for purposes of argument that the position of counsel for defendant is correct, the Court is still of the opinion that the battery inflicted by Terry on McInnis was unlawful.
In the case of Landry v. Gilger Drilling Co., La.App., 92 So.2d 482, at page 484, Judge Tate, organ of the Court, sets out the following rules which the Court will follow in this case:
"`It is a general rule in this class of cases that a plaintiff can recover in an action for an assault and battery committed without legal excuse unless he provoked the difficulty by conduct calculated to arouse the resentment or fears of the defendant (citations),' Smith v. Bankston, La.App. 1 Cir., 75 So.2d 880, 882. `The doctrine is well established in this state that one who provokes a difficulty with another cannot recover damages for injuries inflicted upon him as a result thereof, even though the conduct of the one who inflicts the injuries was not justified in law. (Citations.)' Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456, 457.

* * * * * *
"The aggressor doctrine does not apply against the original aggressor insofar as excessive force, or force beyond what is reasonably required under the circumstances of the case, is used against his person, Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456; Bacas v. Laswell, La.App.Orleans, 22 So.2d 591; Newman v. Southern Kraft Corporation, La.App. 2 Cir., 197 So. 197, cf. LSA-R.S. 14.19, Criminal Code, see Ford v. Williams, La.App. 1 Cir., 62 So.2d 838, 840;
"Nor does it apply against the original aggressor after his bona fide and reasonably perceivable retirement from the affray, or attempt to do so, *334 when the original victim pursues the original aggressor and assaults the latter after his retreat, Oakes case, supra cit., Randall v. Ridgley, La.App.Orleans, 185 So. 632, cf. LSA-R.S. 14:21 Criminal Code, State v. Stroud, 198 La. 841, 5 So.2d 125; State v. Plain, 171 La. 128, 129 So. 730; State v. Corneille, 153 La. 929, 96 So. 813, see Beaucoudray v. Hirsch, La.App.Orleans, 49 So.2d 770."
Applying the above rules of law to the case at bar, even if the contention advanced by counsel for defendants should be correct, still plaintiff is entitled to recover damages from John Wesley Terry for the reason that Terry used excessive force beyond what was reasonable under the circumstances of the case at bar, and for the further reason that even if McInnis had struck Terry intentionally, which the Court does not believe he did, that he had retired from the affray and Terry then pursued McInnis without justification, under the cases cited hereinabove.
The Court will next consider the liability of Hubert Westmorland on behalf of his son, Jerry Westmorland. It is alleged by the plaintiff and found by the trial judge that Jerry Westmorland assisted and encouraged Terry into the commission of the act in two manners: (1) by stating to Terry that McInnis had struck Terry, and (2) by blocking his passageway. In support of this contention, plaintiff and the trial judge cite Article 2324 of the LSA-Civil Code, which provides:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
On Page 25 of the transcript, young McInnis, while on cross examination was asked by counsel for Terry:
"Q. Now, did you see Jerry Westmorland there?
"A. Not until after I had already been hitwhen I walked up the steps."
On Page 26 of the transcript, young McInnis gave another variation of the incident, as follows:
"Q. That's what I say, you were walking back up the aisle where J. W. Terry, Jerry Westmorland, and Buddy Browning was, didn't you?
"A. I did not see Buddy Browning, but John Wesley and Jerry Westmorland were standing in the aisle."
There is an apparent contradiction in the testimony of McInnis, as shown on Page 25 and Page 26. While it is true McInnis is a young minor and probably was nervous on the witness stand during the trial, still the Court must determine this suit from the record as made up in the trial court.
Young Westmorland never did attempt to strike McInnis. This is verified by the testimony of McInnis, shown at Page 27 of the transcript. While on cross examination, the following question was asked and the following answer was given by young McInnis:
"Q. All right, then, what happened?
"A. And then John Wesley asked Jerry, said, `Is this the boy that hit me?' and Jerry shook his head and said, `Uh-huh', and at that time I looked to the left to see if I could get by them or get over to the band and at that time he hit me in the mouth."
The District Court did not find any reasons for holding the father of young Westmorland liable, except those outlined above. He has cited no cases in support of his ruling. Counsel for plaintiff cited two cases, namely, that of Gardiner v. Erskine et al., 170 La. 212, 127 So. 604, and that of Ford v. Williams, La.App. 1 Cir., 1953, 62 So.2d 838. However, a reading of the Gardiner and Ford cases, supra, show that in each case, all of the defendants were *335 active participants in the trouble which occurred in these cases.
The Court has concluded that plaintiff has not shown sufficient evidence to hold Westmorland, under the provisions of Article 2324 of the LSA-Civil Code of Louisiana.

Quantum
There is no question in the mind of the Court that the blow inflicted by Terry on McInnis was of a severe nature. As shown by the evidence, the minor McInnis was seen by Dr. J. E. Hearn, Jr., for the cuts and lacerations of the upper and lower lips. He referred him to Dr. Charlie B. Tramel, a dentist, and the substance of Dr. Tramel's testimony was that McInnis lost three permanent teeth, one of which required dental surgery to remove.
Considering the physical injuries and mental pain and suffering by young McInnis, the Court is of the opinion that the award of $2,400 by the trial judge is correct. This Court had occasion to examine an assault and battery case in Dittmann v. Long, 114 So.2d 44, which involved injuries of a similar nature except to the nose and area around the nose. An award of $3,000 was made in that case. The author of this opinion was the trial judge in the Dittmann case, supra, and the injuries were somewhat more severe than those in the case at bar. In that case the Court allowed $3,000 for physical pain and mental anguish.
Plaintiff father has proven for himself individually the medical expenses in the sum of $324, which was not contested by defendants and which this Court finds correct.
For the reasons assigned, the judgment of the lower court is affirmed insofar as John Wesley Terry is concerned, and reversed insofar as Hubert Westmorland is concerned, and the suit filed by plaintiff against Hubert Westmorland is hereby dismissed and he is discharged from all liability herein.
The costs in the trial court and on appeal are to be paid by the defendant, J. W. Terry.
Affirmed in part.
Reversed in part.