HAMLIN, Justice.
In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, La.Const, of 1921) we directed Certiorari to the Court of Appeal, Third Circuit, for a partial review of its judgment which affirmed a judgment of the trial court in favor of plaintiff, Archie G. Taylor, and against defendants, ' Hartford Accident and Indemnity *249 Company and State Farm Mutual Automobile Insurance Company, in the amounts of $5,000.00 and $5,234.15, respectively. In granting the writ, we stated, “Writ granted as to State Farm Mutual Automobile Ins. Co., but limited to a consideration of the question of whether Daniel Taylor was a resident of the household of Garnie Taylor in Arkansas at the time of the accident (Assignment of Error No. 1.) In all other respects the application is denied.” 247 La. 681, 173 So.2d 543; La.App., 171 So. 2d 816; La.App, 158 So.2d 413.
The facts leading to this proceeding are not in dispute. During the early morning hours of September 13, 1962, plaintiff and his nephew, Daniel Taylor, born in 1943, departed from plaintiff’s residence in Pine-ville, Louisiana, to go to their place of employment near New Roads, Louisiana. Daniel drove plaintiff’s 1957 Ford Ranchero pickup truck with his uncle’s consent, while plaintiff slept on the seat next to him. Some few miles west of Marksville, Louisiana, Daniel apparently went to sleep and lost control of the vehicle. He and plaintiff were awakened by the swerving motion of the truck, which overturned despite their attempts to regain control of it. As a result, plaintiff was seriously injured.
At the time of the accident, Daniel, the son of Garnie William Taylor of Camden, Arkansas, was an unemancipated minor, nineteen years of age, having resided with his parents all of his life; he had graduated from high school in Arkansas during May, 1962, and wanted to go to work. During the early part of July, 1962, Archie Taylor, a drag-line operator, asked Daniel to come to Louisiana and work with him as an oiler. Daniel accepted his uncle’s invitation and came to Louisiana; he lived with his uncle but paid his own way; he secured employment with his uncle’s employer, his work being under his uncle’s supervision. He brought to Louisiana those clothes that he needed for work and visited his parents several times when he had time off.
Plaintiff brought this suit for damages against his own liability insurer, Hartford Accident and Indemnity Company, and against State Farm Mutual Automobile Insurance Company (Hereinafter referred to as State Farm), the liability insurer of Garnie W. Taylor, Daniel’s father.
Relying on the case of Watkins v. Cupit, 130 So.2d 720, both the trial court and the Court of Appeal held that Daniel’s legal residence was that of his parents, Camden, Arkansas, and that State Farm was liable to plaintiff in damages for the negligence of his nephew. ■
State Farm argues in this Court that the Court of Appeal erred in holding that Daniel Taylor was not a member of the same household as plaintiff with whom he was admittedly living and working and in *251 holding that Daniel Taylor was a resident of the same household as his father in Arkansas.
Insofar as this limited writ is concerned, the pertinent provisions of State Farm’s family type policy provide:
“POLICY NUMBER POLICY PERIOD (Month-Day-Year) 291 359-F30-04 06-26-58 to 12-30-58
“Named Insured COVERAGES AS DEFINED IN POLICY TAYLOR, GARNIE W ABCD G$50 ROUTE 1 BOX 192A LOUANN ARK
* * * * * * * * * * *
“DEFINITIONS — INSURING AGREEMENTS I AND II
Named Insured — means the individual so designated in the declarations and also includes his spouse, if a resident of the same household.
Insured — under coverages A, B, C and M, the unqualified word ‘insured’ includes (1) the named insured, and also includes (2) his relatives, (3) any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured, and (4) under coverages A and B any person or organization legally responsible for the use thereof by an insured as defined under the three subsections above.
Relative — means a relative of the named insured who is a resident of the same household.
Automobile — means the private passenger automobile, utility automobile or trailer described in the declarations and includes ■ a temporary substitute automobile and a newly acquired automobile, and under coverages A, B, C and M a trailer owned by the named insured.
Private Passenger Automobile — means a private passenger, station wagon or jeep type automobile. Utility Automobile — means an automobile with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type.
***********
*253 “INSURING AGREEMENT II — NON-OWNED AUTOMOBILES Such insurance as is afforded by this policy under coverages A, B, Division 2 of C and M, D, D-50, F, G and H with respect to the automobile applies to the use of a non-owned automobile by the named insured or a relative, and any other person or organization legally responsible for the use by the named insured or relative of an automobile not owned or hired by such other person or organization.
Insuring Agreement II does not apply:
(1) to a non-owned automobile (a) registered in the name of the named insured or a relative, (b) hired by or furnished to the named insured or a relative, for regular use, or (c) whil such named insured or relative * * : used in the business or occupation of * »
Daniel Taylor, being his son, was a relative of Garnie W. Taylor at the time the instant accident occurred. Posed for our determination, therefore, is the question of whether under the facts as stated supra he was “a resident of the same household” as that of Garnie W. Taylor, the named insured under the instant family automobile liability policy.
In 21 La.L.Rev., pp. 835, 836, the author (Gerald L. Walter, Jr.) well states:
“The guiding principle of the family automobile policy ‘is to cover virtually every risk contingency which might reasonably occur in a family’s use of automobiles.’ In general, the policy attempts to provide protection for the insured against liability growing out of the use of an automobile without regard to the particular automobile being used at the time when liability attaches.
At the same time certain limitations are imposed for the purpose of enabling the insurer to set premiums which will not make the cost of such a policy prohibitive. Broadening of coverage, while maintaining reasonable' premiums, has been accomplished through such provisions as the ‘non-owned automobile,’ ‘owned automobile,’ and ‘temporary substitution’ provisions.”[1]
The instant insurance policy constituted a contract between Garnie W. Taylor and State Farm and was the law between them. Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646. The policy was issued in 1958, and no contention has been raised that it was not in force and that premiums were not timely paid at the time of the accident. The words used in the policy are to be understood in the common and usual signification, without attending so much to grammatical rules as to general and popular use. LSA-C.C. *255 Art. 1946. “Also, all ambiguities in the provisions of an insurance policy are to be construed in favor of the insured and against the insurer, subject to the qualification that if the intent of the policy is clearly evidenced by the terms of the contract, then the policy must be given a reasonable interpretation with relation to such intent.” Liprie v. Michigan Millers Mutual Insurance Co., La.App., 143 So.2d 597. See, Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95, 29 So.2d 483.
On September 13, 1962, Daniel Taylor was a minor under both Louisiana law and Arkansas law.[2] His domicile was that of his father. LSA-C.C. Art. 39; Toca v. Rojas, 152 La. 317, 93 So. 108; [3] Blackburn v. Blackburn, La.App., 168 So.2d 898; Graves v. Graves, La.App., 122 So. 2d 350; Oglesby v. Turner, 127 La. 1093, 54 So. 400; In Re Watson, D.C., 99 F. Supp. 49; Central Manufacturers’ Mut. Ins. Co. of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557; Cf. Bell v. Silas, 223 Ark. 694, 268 S.W.2d 624; Johnson v. Taylor, 140 Ark. 100, 215 S.W. 162. Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children. LSA-C.C. Art. 227. The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. LSA-C.C. Art. 2318. Watkins v. Cupit, La.App., 130 So.2d 720; 36 Tu.L. Rev. 340; LaRue v. Adam, La.App., 59 So.2d 839.
Residence and domicile are not synonymous terms. LSA-C.C. Art. 38; Oglesby v. Turner, 127 La. 1093, 54 So. 400; Foreman v. Jordan, La.App., 131 So. 2d 796; Harrison v. Commission Council of Bogalusa, La.App., 169 So.2d 159; Stephens v. AAA Lumber Company, 238 Ark. 842, 384 S.W.2d 943; Vehrs v. Jefferson Insurance Company, La.App., 168 So.2d 873, 877; In Re Watson, D.C., 99 F.Supp. 49. Even though a person, which could include a child, might have several residences, de *257 spite the fact that he has one domicile, the legal residence of an unemancipated minor (with which we are herein concerned) is that of his father unless changed by law. McInnis v. Terry, La.App., 121 So.2d 329; Watkins v. Cupit, La.App., 130 So.2d 720.[4] This is reasonable and understandable because, as stated supra, the father has numerous obligations to his child (including his support and maintenance), is invested with parental authority, LSA-C.C. Art. 216, and is responsible in great measure for his actions.
The instant policy merely recites “resident” and not “legal resident.” “Whether a person is or is not a resident of a particular place is a question of law and fact, to be determined from all the facts of each particular case, but mere isolated facts cannot be relied on wholly to determine the question.” 77 C.J.S. Resident p. 307. In State Farm Mutual Automobile Ins. Co. v. Walker, 334 S.W.2d 458, the Texas Court of Appeals, interpreted the word “resident”, employed in a policy similar to the instant one, as follows: — “ * * * the term ‘resident’ should be construed to mean ‘member’, or ‘member of the same family’. As applied to a ‘family’, a person is either a member of it or is not a member of it, for it is a personal relationship. It would not be possible to be a ‘resident’ of a family. It is possible to reside in or be a ‘resident’ ‘in a house’, but not ‘of a house.’ One may be a ‘member’ of a family or organization or group, but not of a building or of anything inanimate.” 77 C.J.S. Resident p. 307, states that, “As a noun, ‘resident’ is defined as meaning one who has a residence, as distinguished from one who has a place of business, or a place where he earns his living; one who abides, or dwells, or lives in a particular place, as distinguished from one who merely works in a certain locality, or in a certain place of business; one who lives at a place and no present intention of removing therefrom; * * * one who resides or dwells in a place for a period of more, or less, duration; * *
We next approach a determination of the meaning of the phrase, “of the same household.” We find the case of Central Manufacturers’ Mut. Ins. Co. of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557, very helpful. Therein, plaintiff brought an action in Arkansas on a policy of theft insurance on behalf of his minor son, nineteen years of age, who suffered a theft while he was in the Army and located in a state other than Arkansas. Holding that plaintiff could recover, the Court stated:
*259 “At the time of the property loss here, Benno was a minor and it was the duty of the parent to support and educate him so long as he remained a member of his family, * * *
“The domicile of Benno was with his father, * * * Domicile includes residence and place of abode. Webster defines ‘domicile’: ‘A place of residence, either of an individual or a family; a dwelling place; an abode; a home or habitation.’ Residence and place of abode are synonymous, * * The Constitution of this state provides: Art. XIX, Sec. 7: ‘Absence on business of the State of the United States, or on a visit * * * shall not cause a forfeiture of residence once obtained.’
“ * * *
“We think the word ‘household’ as used in the section of the policy, supra, meant domicile, residence or place of abode. ‘Household’ is defined in 2 Bouv.Law Dict., Rawle’s Third Revision, page 1462, as follows: ‘Those who dwell under the same roof and constitute a family. Webst. But it is not necessary that they should be under a roof, or that the father of the family be with it, if the mother and children keep together so as to constitute a family; * * .*
“We hold that Benno Friedman was a ‘member of the insured’s family of the same household’ and was therefore protected by the policy when the theft occurred, * * *”
Webster’s New World Dictionary, College Edition, defines “household” as follows: “1. all the persons who live in one house; family, or family and servants. 2. the home and its affairs.” 41 C.J.S. Household p. 367, states that, “Household” as a noun is a word of well-known legal meaning, being the definition of the Latin word “familia.” We have read many cases in which the word “household” has been interpreted; some interpretations are that in order to be a member or resident of the same household, one must live under the same roof as the head of the house; others are to the effect that if one is a member of a family, it is not necessary that he be present under the family roof at all times — temporary absence does not preclude his being a member of the household. See, Home Ins. Co. v. Pettit, 225 Ala. 487, 143 So. 839; American Universal Insurance Company v. Thompson, 62 Wash.2d 595, 384 P.2d 367; Cal-Farm Insurance Company v. Boisseranc, 151 Cal.App.2d 775, 312 P.2d 401; State Farm Mut. Automobile Ins. Co. v. James, 4 Cir., 80 F.2d 802; Fidelity & Casualty Co. of New York v. Jackson, D.C., 194 F.Supp. 431; State Farm Mutual Automobile Ins. Co. v. Walker, Tex.Civ.App., 334 S.W.2d 458; Travelers Indemnity Co. v. American Indemnity Co., Tex.Civ.App., 315 S.W.2d 677; Bannerman v. St. Paul Mercury In *261 demnity Company, La.App., 144 So.2d 167; Leteff v. Maryland Casualty Company, La. App., 91 So.2d 123.
We conclude that under the facts of the instant case, Daniel Taylor’s legal residence was that of his father, Garnie William Taylor, Camden, Arkansas. Daniel was a member of his father’s family; there had been no divestiture of relationship ; and, he visited his parents. Although he did want to work with his uncle, there is no showing that Daniel was not free to go home at any time he pleased, and there is also no showing that his parents were unwilling or were not obligated to support him. There is no conclusive evidence of record that Daniel had made a permanent residence in Louisiana at the time of the accident.
We conclude that while he was an unemancipated minor Daniel had to be considered as temporarily absent from his parent’s home. We find that it was not necessary that he be under his parents’ roof at all times in order to be a “resident of the same household.” We further find that under the facts as presented, Daniel Taylor was a “resident of the same household” as the insured, Garnie W. Taylor.
Assignment of Error No. 1 is therefore without merit.
For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. All costs in this Court to he paid by State Farm Mutual Automobile Insurance Company.
FOURNET, C. J., concurs.

. Both the trial court and the Court of Appeal determined that the car being driven by Daniel Taylor did not fall within the exclusions of the instant policy.

. “Minors are those of both sexes, who have not yet attained the age of one and twenty years complete; and they remain under the direction of tutors till that age. When they have attained that age, then they are said to be of full age.” LSA-C.C. Art. 37.
“Males of the age of twenty-one [21] years, and females of the age of eighteen [18] years, shall be considered of full age for all purposes, and, until those ages are attained, they shall be considered minors.” Arkansas Statutes, § 57-103.

. In Toca v. Rojas it was pertinently stated: — “Domicile is declared to be that place in which a person makes his habitual residence (O.O. 38), and the domicile of the father, when living, and of the mother when the father is dead, is that of the minor not emancipated (O.C. 39). A child cannot quit the paternal house without the permission of his father and mother, who have a right to correct him, provided it be done in a reasonable manner. O.O. 218.”

. In Watkins v. Oupit the Court stated: —“We are of the same opinion. As a matter of law, the residence of an unemancipated minor is that of his father unless changed in some manner prescribed by law. McInnis v. Terry, La. App., 121 So.2d 329, LSA-Civil Code Article 39. * * * ”