521 P.2d 1010

Mathews C. **TENCZA** and Gladys Bonhardt Tencza, husband and wife, and Gladys Bonhardt Tencza, mother and surviving relative of Theresa Bonhardt, Deceased, and John Does I through 10, surviving relatives of Theresa Bonhardt, Deceased, Appellants,

v.

AETNA CASUALTY & SURETY COMPANY, a corporation, Appellee.

No. 2 CA–CIV 1542.

Court of Appeals of Arizona, Division 2.

May 10, 1974.

Rehearing Denied June 5, 1974.

Review Granted July 2, 1974.

Laber, Lovallo & Colarich, Ltd. by Sidney F. Wolitzky, Tucson, for appellants.

Everett, Bury & Moeller, P. C. by J. Michael Moeller, Tucson, for appellee.

## OPINION

KRUCKER, Judge.

This is an appeal from a declaratory judgment in favor of appellee-insurer concerning a coverage issue.

In December, 1971, Theresa · Bonhardt, daughter of Mrs. Tencza and stepdaughter of Mr. Tencza, was struck and killed by an uninsured vehicle near Tucson, Arizona. An insurance policy issued by appellee to Mr. Tencza contained an uninsured motorist endorsement providing coverage to the named insured and any relative. The term "relative" is defined in the policy as "a relative of the named insured who is a resident of the same household." The pivotal question is whether, under the circumstances presented here, Theresa was, at the time of the accident, "a resident of the same household" as her stepfather.

Until the end of September, 1971, Theresa had lived with her mother and stepfather in New York. The family had discussed on many occasions moving to Arizona for her stepfather's health and the stepfather had advised his employer of his intention to leave at a future date. In late September Theresa, who was then just past 18 years of age, departed · from the family home, spent several weeks in Brooklyn, New York, with some relatives and then flew to Arizona. She left home with only a small suitcase containing a few items of wearing apparel and a small photo album. It appears from the record that some time at the end of October Theresa moved into the home of a pair of school teachers in Sells, Arizona. In exchange for her room and board Theresa helped around the house. Although she had no intention of moving back to New York, Theresa expected her parents to come to Arizona in April, 1972, and she was planning to move in with them at that time. During this period, Theresa corresponded with her mother and her mother forwarded to her a Social Security check and an additional $50.00. (The Social Security check was by virtue of her natural father's death.)

At the time Theresa left New York, she had not completed her high school education. In order to attend school in Sells, Arizona, she needed tuition money, which she had requested from her mother.

When Theresa left the family home in September, she left behind her clothes and personal belongings with the exception of the items in the small suitcase and her dog. The Tenczas, as they had previously discussed when Theresa was at home, did in fact move to Arizona in April, 1972. Mr. Tencza, when questioned as to why Theresa left New York, responded:

"Well, we were talking about coming out to Arizona for my health, and I guess we spoke about it to her many a —times, and she just jumped the gun, but she had a slight misunderstanding with her brother. . . ."

■ The determinative question is whether Theresa was a resident of the Tencza household within the policy provision despite the fact that she was in Arizona at the time of her death. There is no question but that both under Arizona law and New York law Theresa was then a minor. A.R.S. § 1–215(17) (prior to its 1972 amendment); N.Y. SCPA § 103(26). The insurance company does not attempt to argue that Theresa was not a "relative" because she was only the stepdaughter of the named insured. We agree with the following statement in Box v. Doe, 254 La. 457, 221 So.2d 666 (1969):

"At the time of the accident she was the stepdaughter of the named insured . . . and therefore in our opinion a 'relative' within the generally accepted meaning of the word. Webster's New International Dictionary (Second Edition) defines 'relative' as 'a person connected with another by blood or affinity,' and defines 'affinity' as the 'relationship. by marriage between a husband and his wife's blood relations or between a wife and her husband's blood relations.'" 221 So.2d at 669.

See· also, Appleton v. Merchants Mutual Insurance Co., 16 A.D.2d 361, 228 N.Y.S. 2d 442 (1962).

The parties refer to many cases which discuss the term herein involved. While the cases do not all appear consistent, it can generally be stated that insofar as they

involve insurance policies, they can be roughly divided into those excluding from coverage members of the insured's household and those extending coverage to such persons. In the extension cases, the terms are broadly interpreted while in the exclusion cases the same terms are given a much more restricted interpretation.

■ This is a salutary approach because in both situations the courts adopt an interpretation in favor of coverage. *See,* Widiss, A Guide to Uninsured Motorists Coverage, § 2.6. For example, where the phrase "resident of the same household" is defining the extent of the coverage, it is broadly interpreted. E. g., American Universal Insurance Co. v. Thompson, 62 Wash.2d 595, 384 P.2d 367 (1963); Fidelity General Insurance Co. v. Ripley, 255 La. 248, 228 So.2d 238 (1969); Allstate Insurance Co. v. Smith, 9 Cal.App.3d 898, 88 Cal.Rptr. 593 (1970); Box v. Doe, supra; Taylor v. State Farm Mutual Auto Insurance Co., 248 La. 246, 178 So.2d 238 (1965); Travelers Indemnity Co. v. Mattox, 345 S.W.2d 290 (Tex.Civ.App.1961). Where the same phrase pertains to an exclusion, however, it is narrowly interpreted. E. g., Island v. Fireman's Fund Indemnity Co., 30 Cal.2d 541, 184 P.2d 153 (1947); Shapiro v. Republic Indemnity Co. of America, 52 Cal.2d 437, 341 P.2d 289 (1959); Lumbermens Mutual Casualty Co. v. Pulsifer, 41 F.Supp. 249 (D.C.Me.1941).

■ The word "resident" is an ambiguous, elastic, or relative term and includes a very temporary, as well as a permanent abode. Crossett v. St. Louis Fire & Marine Insurance Co., 289 Ala. 598, 269 So.2d 869 (1972). No citation of authority is necessary for the well-settled rule that where provisions of an insurance policy are susceptible of plural constructions, consistent with the object of the obligation, that construction will be adopted which is favorable to the insured. Application of this rule requires that we adopt that construction which is in favor of the insured.

■■ "Residence" emphasizes membership in a group rather than an attachment to a building—it is a matter of intention

and choice rather than one of geography. American States Insurance Co., Western Pacific Division v. Walker, 26 Utah 2d 161, 486 P.2d 1042 (1971). We are of the opinion that notwithstanding Theresa was not physically residing in the Tencza household at the time of the accident, she was a resident of the household for purposes of insurance coverage.

■ The evidence reflects that Theresa was an unemancipated minor at the time of her death. The term "emancipation" means the freeing of a child from the custody of the parent and from an obligation to render services to him. 67 C.J.S. Parent and Child § 86. It results not from the conduct of the child but from some juristic act or other conduct of the parent from which extinguishment of parental rights and filial duties may be inferred. Detwiler v. Detwiler, 162 Pa.Super. 383, 57 A.2d 426 (1948). It is true that Theresa left home. However, emancipation cannot be accomplished by the acts of a child alone but rather is a product primarily of the acts or omissions of the parents. Schirtzinger v. Schirtzinger, 95 Ohio App. 31, 117 N.E. 2d 42 (1952).

■ Emancipation of a minor child must be proved by evidence that is clear and convincing. Holmes v. Raffo, 60 Wash.2d 421, 374 P.2d 536 (1962). When, as here, it was established that Theresa was a minor there is no presumption of emancipation and the insurer had the burden of proving that she had been emancipated. Bates v. Bates, 62 Misc.2d 498, 310 N.Y.S.2d 26 (1970). Concededly, establishment of a separate abode may be evidence of emancipation. Jolicoeur v. Mihaly, 5 Cal.3d 565, 9 Cal.Rptr. 697, 488 P.2d 1 (1971); *see,* Annot. 165 A.L.R. 723, 740. However, Theresa's conduct in coming to Arizona, knowing that her parents intended to do so in the near future, and living with the Sells' school teachers, was not sufficient to support a finding of emancipation.

■ The residence of an unemancipated minor is that of his parents. In re Webb's Adoption, 65 Ariz. 176, 177 P.2d

**556**

222 (1947); Taylor v. State Farm Mutual Auto Insurance Co., 248 La. 246, 178 So.2d 238 (1965).

In *Taylor*, the facts were that the claimant was an unemancipated minor, 19 years of age, who had resided with his parents all of his life. He had graduated from high school in Arkansas in May, 1962, and wanted to go to work. During the early part of July, 1962, his uncle asked him to come to Louisiana and work with him, whereupon the minor accepted his uncle's invitation and went to Louisiana. He lived with his uncle but paid his own way. He secured employment with his uncle's employer, his work being under his uncle's supervision. He brought to Louisiana those clothes that he needed for work and visited his parents several times when he had time off. In September, 1962, an accident occurred while the minor was driving and the injured party brought suit against the minor and his father's automobile liability insurer, whose policy provided liability coverage for "a relative of the named insured who is a resident of the same household." The Louisiana Supreme Court concluded that while he was an unemancipated minor, the child had to be considered as temporarily absent from his parents' home. It noted that it was not necessary that he be under his parents' roof at all times in order to be a "resident of the same household." The court stated:

"We conclude that under the facts of the instant case, Daniel Taylor's legal residence was that of his father, Garnie William Taylor, Camden, Arkansas. Daniel was a member of his father's family; there had been no divestiture of relationship; and, he visited his parents. Although he did want to work with his uncle, there is no showing that Daniel was not free to go home at any time he pleased, and there is also no showing that his parents were unwilling or were not obligated to support him. There is no conclusive evidence of record that Daniel had made a permanent residence in Louisiana at the time of the accident." 178 So.2d at 243.

The evidence being insufficient to demonstrate that Theresa was an emancipated minor, we hold that her mere absence from the "family roof" did not deprive her of being a member of the household within the purview of the insurance policy. The purpose of the subject insurance policy was to provide family protection and such being the case, had the insurance company intended coverage to be restricted to physical residence in the same household, it could have drafted its policy with greater precision.

For the foregoing reasons the judgment is reversed with directions to enter an appropriate judgment in accordance herewith.

HATHAWAY, C. J., and HOWARD, J., concur.