442 So.2d 642 (1983)
Richmond F. KEMP, III
v.
STATE FARM FIRE AND CASUALTY COMPANY, et al.
No. 83 CA 0179.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
Writ Denied January 27, 1984.
Walker P. Macmurdo, Baton Rouge, for plaintiff-appellant Richard F. Kemp, III.
Dale M. Maas, John Dale Powers and David M. Vaughn, Baton Rouge, for defendants-appellees Dr. Joseph C. Bonck and Joseph C. Bonck, Jr.
Horace C. Lane, Baton Rouge, for defendant-appellee State Farm Fire and Casualty Co.
Before COVINGTON, COLE and SAVOIE, JJ.
COVINGTON, Judge.
Plaintiff, Richmond F. Kemp, III, sued defendants, State Farm Fire and Casualty Company, Dr. Joseph C. Bonck and Joseph C. Bonck, Jr., seeking recovery for personal *643 injuries sustained when he attempted to light a butane gas burner which was located at Dr. Bonck's camp. The issue presented for determination is whether Joseph C. Bonck, Jr. was an "insured" under a homeowners policy, No. 1800210195, issued by State Farm Fire and Casualty Company to Dr. Joseph C. Bonck. The trial court held that he was not an "insured" and granted a summary judgment in favor of State Farm. We affirm.
On July 3, 1981, Dr. Joseph C. Bonck was the owner of a camp at Grand Isle. On that day, Joseph C. Bonck, Jr. and Richmond F. Kemp, III, both young men about twenty-one years of age, were at the Bonck camp, with Dr. Bonck's permission, and both young men suffered burns when they attempted to light a butane gas burner to boil some crabs. Dr. Bonck did not accompany the young men on the trip and was not present when the accident occurred.
Dr. Bonck and Mary L. Bonck, the mother of Joseph C. Bonck, Jr., were divorced more than eight years ago, and Mrs. Bonck was given legal custody of Joseph, Jr., who has attained the age of majority, but continues to reside with his mother.
At the time of the accident, State Farm Fire and Casualty Company had in force a policy of homeowners insurance providing liability insurance coverage for Dr. Bonck, his second wife and their relatives residing with them in their household.
In the District Court, the judge granted the motion of State Farm for summary judgment, finding no genuine issue as to a material fact. The District Court found that Joseph C. Bonck, Jr. was not a resident of his father's household and, as a result, not insured under his father's policy.
The Court below made its ruling based on the insurance policy and the depositions of Dr. Bonck, Joseph, Jr. and Richmond F. Kemp, III, all of these documents having been filed in evidence in connection with State Farm's motion for summary judgment.
The depositions of Dr. Bonck and his son make it clear that the son was not residing with his father at the time of the accident. The policy insures Dr. Bonck and his second wife, as the named insureds, and those relatives of theirs who are residents of their household. The term "resident of household," has been judicially interpreted many times in this state and the jurisprudence shows, under the established facts of this case, that Joseph, Jr. was not a resident of his father's household. He resided with his mother.
Briefly, the depositions show that Dr. and Mrs. Mary L. Bonck were divorced when Joseph C. Bonck, Jr. was still a minor. The accident occurred many years later when Joseph, Jr. was about twenty-one years old. At the time he was a student at Southeastern Louisiana University, and still lived full time with his mother, who is insured by State Farm under another policy. The depositions show that in the divorce Mrs. Bonck was awarded custody of the son, and that he has lived with her up to the present time. The depositions also show that he did not spend any time at his father's house. In fact, he could only remember spending the night there once in the last five years. He kept no clothes there and has not lived in his father's house since Dr. Bonck and Mrs. Bonck were divorced.
The pertinent definition of "insured," reading from the policy, is as follows:

* * * * * *
3. "insured" means you and the following residents of your household:
a. your relatives;
b. any other person under the age of 21 who is in the care of any person named above.
In order to be insured under his father's policy, Joseph, Jr. would have had to be a resident of his father's household. The contrary is demonstrated by the testimony of Dr. Joseph C. Bonck.
Q. Doctor, do you recall what year you and your first wife were divorced?
A. I'd say about eight years ago.

*644 Q. Okay.
A. We were separated about ten, divorced about eight.
Q. And was there a property settlement?
A. Yes, sir, there was.
Q. And did the Court award Mrs. Bonck custody of the children?
A. Yes, they did.
Q. Subsequent to the divorce, did Joe ever live with you at your house?
A. No, he hasn't.
Q. And you heard him testify that he had spent one night in your house in the last four or five years. Would you agree with that?
A. That is certainly correct.
Q. Did he keep any clothes at your house, any possessions?
A. No, sir.
Joseph Bonck, Jr. testified in his deposition that his date of birth was March 2, 1959. At the time of the accident he was a college student. The following testimony from his deposition confirms that of his father to the effect that he was not on the date of the incident a resident of the household of Dr. Bonck:
Q. Are your mother and father divorced?
A. Yes, sir, they are.
Q. Do you know what year they were divorced?
A. No, sir. I'm not sure.
Q. About how long?
A. About 11, 12 years.
Q. Has either one of them remarried?
A. Yes, sir. My father has.
Q. You would have been 11 or 12 years old when they got the divorce?
A. I believe I was 13.
Q. Do you know whose custody you were placed in as a result of the divorce?
A. Yes, sir. I was placed in my mother's custody.
Q. Have you lived with her ever since?
A. Yes, sir, I have.
Q. What is her address?
A. 409 East Buffwood, B-u-f-f-w-o-o-d.
Q. And you were living with your mother in July of 1981 except for the time you put in at school?
A. Yes, sir, I was.
Q. Have you ever lived in your father's house since he and your mother were divorced?
A. No, sir.
* * * * * *
Q. In the past several years, had you ever spent the night at your father's house?
A. Yes, sir. I believe on one occasion I did.
Q. When was that?
A. It seems like maybe a year, a year and a half before the accident. I believe I stayed over. We were planning on going to Grand Isle fishing, before we had the camp. And I showed up. I came home about 10:30, 11:00 o'clock that night and stayed on his couch. And then we left like 4:00 or 5:00 in the morning to go fishing.
Q. Except for that occasion, have you ever spent another night at your father's house in the last four, five years?
A. No, sir.
We find that Joseph C. Bonck, Jr. has at no time since the divorce of his parents been a resident of his father's household. He has lived with his mother from the time of the divorce up to and including the time of the accident. Therefore, he does not have coverage under his father's policy because he is not a resident of his father's household.
In the case of Bannerman v. St. Paul Mercury Indemnity Company, 144 So.2d 167, 170 (La.App. 1st Cir.1962), the Court said:
We do not believe that there can be any doubt that John Litchy was not a member of his father's household at the time *645 of the accident. Black's Law Dictionary defines "household" as "A family living together" * * * "those who dwell under the same roof and compose a family." In Leteff v. Maryland Casualty Company, La.App., 91 So. 2nd 123, this Court was concerned with determining the meaning of the phrase "member of household". In that case, on Page 130, we stated as follows:
"Whether the term `household' or `family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a `collective body of persons living together within one curtilage, subsisting in common and their attention to a common object, the promotion of their mutual interest and social happiness.'" We do not believe that by any stretch of the imagination that John Litchy could be considered a member of his father's household in this particular case.
Appellant, in his brief, relies upon Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Earl v. Commercial Union Assurance Company, 391 So.2d 934 (La.App.2d Cir.1980); and Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238 (1965).
These cases are factually distinguishable from the case at bar.
In Bond, the son had an apartment in another town for work purposes only. The son still maintained a substantial connection with his father's home, where he had actually maintained a residence. In Bond, the Court said:
... The deceased's father testified, however, that his son kept only his work clothes and the bare essentials for apartment living in Lafayette.
Mr. Bond testified that his son lived at his home in Alexandria most of the time when he was not required to be on call for work. He had his own key to the house and came and went as he pleased. The deceased had his own room at the house in Alexandria and kept various items of personal property there, including a desk, most of his clothes, a gun collection, two dogs, stereo and camping equipment and other personal belongings. Young Bond was allowed free use of the family automobile to which he had duplicate keys. The deceased received various items of mail at the Alexandria address, including dividend checks from two different corporations, federal and state tax forms, car insurance payment notices, and mail from friends. Further, Mr. Bond testified that the deceased had a substantial relationship with the Alexandria social, commercial, and professional communities involving bank accounts, retail charge accounts, dental and other medical consultations, and church membership. Id., 407.
None of the circumstances found by the Court in Bond to indicate "residence" are found in the present case. Young Bonck had never lived with his father after the divorce, had no room in his father's house, kept no clothing there and was not free to come and go at his father's house, as was the situation in Bond.
The Earl case involved an unemancipated minor temporarily absent from the parental home with no intent being shown to establish a residence separate from that of the parents. It is not a similar situation to the instant case. The Court noted that:
Plaintiff was only temporarily in Houston. She visited her parents during her absence and there were plans for her to return to her father's residence and attend college. She retained her room in her father's home and there left part of her possessions. Her father aided her financially during her absence, and when she was injured she returned to her father's household to convalesce. Plaintiff was temporarily absent from her father's household at the time of the accident and had retained her status as a member of her father's family group.
We conclude that plaintiff is a member of the same household as defendant's named insured. Id., 938.
The Taylor case also involved an unemancipated minor who was found to be a *646 legal resident of the household of his undivorced parents although he resided temporarily elsewhere, because there had been no change of the relationship between the parents and the unemancipated minor child or establishment of a separate residence. In the instant case, there was a legal change or divestiture of residence. While he was yet a minor, young Bonck was legally residing with his mother under court order of custody. After he became of the age of majority he continued to reside with his mother, and never became a resident of his father's household after the divorce.
We find the following cases applicable: Chapman v. Allstate Insurance Company, 306 So.2d 414 (La.App. 3rd Cir.1975), involved a child of divorced parents where the mother had legal custody. The child was a minor and was unemancipated, and had on several occasions stayed with his father for periods of a month or more, but actually resided with his mother. There was evidence that the child was going to live with the father as soon as school was out; however, the son had visited his father only after the latter had moved to Florida. The Court held that the child was not a member of his father's household; he was a legal resident of his mother's household. The Court found that young Chapman was not a "legal resident" of his father's household and, further, the Court found he was not an "actual" resident of his father's household. The Court emphasized there was "a change of status by law." The Court said:
... However, we do not find that Carl was an actual resident of the same household of his father. At the time of the accident Carl was living with his mother in Ville Platte. None of his belongings had been transferred to his father's household in Kenner. Id., 416.
Another pertinent case is Dofflemyer v. Gilley, 395 So.2d 403 (La.App. 3rd Cir. 1981), where the Court found that an unemancipated minor no longer resided with his parents. In Dofflemyer the evidence showed that the minor's decision to leave the parental home was voluntary, permanent and with no intention to return or be further dependent on his parents for support. The Court held that this removed him from the status of a member of his father's household, even though he was still a minor. See also Flannigan v. Valliant, 371 So.2d 349 (La.App. 4th Cir.1979), where a minor who had removed all of his personal belongings from his father's residence, and had become self-supporting and chose voluntarily to leave the residence, was held not to be residing with his father.
In the present case, young Bonck never resided in his father's household after the divorce. Indeed he never intended to return to his father's household as a resident.
Under the explicit provisions of LSA-C. C.P. arts. 966 and 967, it was proper for the trial court to render judgment in favor of State Farm because there was no genuine issue as to material fact and it was entitled to judgment as a matter of law. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980).
For the reasons stated above, the trial court's granting of the motion for summary judgment is affirmed at appellant's costs.
AFFIRMED.