558 So.2d 744 (1990)
Kenneth MENARD and his Wife, Julie Menard, Individually and as Tutors of their Minor Son, Kevin Menard, Plaintiffs-Appellants,
v.
Joseph G. ZENO and his Wife, Mary Chaisson Zeno, as Parents and Tutors of the Minor Child, Johnathan Zeno, ABC Insurance Company-Aetna Casualty & Surety Company, Defendants-Appellees.
No. 88-1140.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
Writ Denied May 18, 1990.
*745 Beard & Cagney, Nanette H. Cagney, Lafayette, for plaintiffs/appellants.
Roy, Carmouche, Bivins, Judice, Henke & Breaud, W. Alan Lilley, Lafayette, for defendants/appellees.
Before DOMENGEAUX, C.J., and GUIDRY and YELVERTON, JJ.
GUIDRY, Judge.
Plaintiffs, Kenneth Menard and his wife, Julie Menard, individually and as tutors of their minor son, Kevin Menard, sued defendants, Joseph Zeno and his wife, Mary Zeno, and their homeowner's insurer, Aetna Casualty & Surety Company (hereafter Aetna), for personal injuries suffered by Kevin Menard as a result of alleged intentional acts perpetrated by Johnathan Zeno, the minor son of Joseph and Mary Zeno. Aetna motioned for summary judgment based on the intentional injury exclusion in its policy of insurance and the trial court granted the motion. Plaintiffs appeal.
The issues presented on appeal are whether issues of material fact exist as to (1) Johnathan Zeno's status as a resident of his parents' household so as to be "an insured" under the policy; and, (2) whether the acts allegedly perpetrated by Johnathan Zeno constitute bodily injury "expected or intended from the standpoint of an insured".
Plaintiffs allege that on June 5, 1986, Johnathan Zeno, then sixteen years old, forcefully and maliciously held a knife to the throat of Kevin Menard, then eight years old, and forced the latter, against his will, to submit to sexual anal intercourse. For this act, plaintiffs claim damages against Johnathan, his parents and their homeowner's insurer, Aetna. Aetna filed a motion for summary judgment urging that the policy afforded no coverage because of the intentional injury exclusion. The trial *746 court granted summary judgment without reasons and plaintiffs appealed. We affirm.
In Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981), the Supreme Court articulated the standard for summary judgment as follows:
"A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Mashburn v. Collin, 355 So.2d 879 (La.1977)."
For purposes of this motion, the defendant, Aetna, concedes the facts of the incident as described in plaintiff's petition and the facts of Johnathan's living arrangement as testified to in the depositions of Johnathan, Mr. and Mrs. Zeno and Hilda Isadore, Johnathan's grandmother.

RESIDENCE
The Aetna policy contains the following exclusion for personal liability and medical payments:
"... to bodily injury or property damage which is either expected or intended from the standpoint of an insured." (Emphasis ours)
An "insured" is defined in the policy to include relatives of the named insured "if residents of the Named Insured's household". Mr. and Mrs. Zeno are the named insureds. Therefore, whether Johnathan is "an insured" under the policy depends upon his residence at the time of the incident. If Johnathan is not a resident of his father's household, there is coverage for the vicarious liability of Mr. and Mrs. Zeno since the alleged assault was neither expected nor intended from the standpoint of "an" insured. If Johnathan is a resident of his parents' household, the exclusion applies provided it is established that he intended the bodily injury.
The facts concerning Johnathan's residence at the time of the incident are without material dispute. According to the depositions of Johnathan, Mr. and Mrs. Zeno and Mrs. Isadore, Johnathan had been "living" at Mrs. Isadore's home for over a year. However, Johnathan still had his own room at the Zeno house and was welcome to come and go as he pleased. He did not have a key to either house. He received mail at the Zeno home and had a private phone line listed in his name at that residence. His father continued to cover him on his health benefits policy and continued to claim him as a dependent on his tax return. His mother bought his clothes, gave him lunch money, paid for his karate lessons, and paid for and arranged his dental appointments. He kept the clothes that he wore more frequently at Mrs. Isadore's home, however, he still had clothes and "stuff" at the Zeno home. Johnathan was a student at Lafayette High School, the school in the district of his parents' home, in spite of the fact that his grandmother's home is located in a different school district. Johnathan had Mrs. Isadore's address on his Lafayette Parish library card issued in May of 1986, but his parents' address was listed on his karate card issued in July of 1986. All witnesses agreed that it was understood that his stay at his grandmother's home was temporary. In fact, shortly after the incident in question, Johnathan moved all of his belongings back to his parents' home. As aforestated while all of these facts are material, they are not disputed. The only question is whether, as a matter of law, viewing these facts in the light most favorable to the plaintiff, was Johnathan a resident of his father's household on June 5, 1986.
La.C.C. article 39 states that "[t]he domicile of a minor not emancipated is that of his father, mother or tutor ...". While *747 domicile and residence are not synonymous terms, domicile includes residence. A person may have several places of residence, but only one domicile. Taylor v. State Farm Mutual Auto Ins. Co., 248 La. 246, 178 So.2d 238 (1965). In Taylor, the Supreme Court addressed the issue of a minor's residence in connection with insurance coverage. In Taylor, the minor left his parents' home in Arkansas to live and work with his uncle in Louisiana. The minor son was involved in an accident in Louisiana while driving his uncle's vehicle, injuring his uncle. The uncle filed suit against the minor's father's liability insurer. In concluding that the minor was a resident of his father's household at the time of the accident and an insured under the father's policy, the court stated:
"Even though a person, which could include a child, might have several residences, despite the fact that he has one domicile, the legal residence of an unemancipated minor (with which we are herein concerned) is that of his father unless changed by law. McInnis v. Terry, La.App., 121 So.2d 329 (1960); Watkins v. Cupit, La.App., 130 So.2d 720 (1961).4 This is reasonable and understandable because, as stated supra, the father has numerous obligations to his child (including his support and maintenance), is invested with parental authority, LSA-C.C. Art. 216, and is responsible in great measure for his actions." Id., 178 So.2d at 242.

. . . . .
"We conclude that while he was an unemancipated minor Daniel had to be considered as temporarily absent from his parent's home. We find that it was not necessary that he be under his parents' roof at all times in order to be a "resident of the same household." We further find that under the facts as presented, Daniel Taylor was a "resident of the same household" as the insured, Garnie W. Taylor." Id. at 243, 244.
We note that the court found Daniel to be a resident of his father's household even though there was no evidence that Daniel had any intention of returning to Arkansas and, in fact, did not as pointed out in the dissent.
We consider Taylor controlling and indistinguishable. In the case sub judice, there is testimony that no legal action was taken to change Johnathan's residence. Johnathan, Mr. and Mrs. Zeno and Mrs. Isadore all testified that Johnathan's stay at Mrs. Isadore's was always considered temporary and, in fact, Johnathan moved back to the Zeno home at the start of the next school year.
Considering the above undisputed facts, we find that the trial court did not err when it concluded that, as a matter of law, Johnathan Zeno was a resident of the Zeno household on June 5, 1986, and, as such, an insured under the Aetna policy.

INTENTIONAL INJURY
The Aetna policy excludes coverage for bodily injury that is either "expected or intended from the standpoint of an insured".
In Pique v. Saia, 450 So.2d 654 (La. 1984), the Supreme Court defined "intentional injury" in connection with a similar exclusionary clause in a homeowner's liability insurance contract in the following manner:
"An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to the result. Bazley v. Tortorich, 397 So.2d 475 (La.1981); W. Prosser, Law of Torts § 8 (4th ed. 1971); Restatement (Second) of Torts, American Law Institute § 8A (1965). Cf. Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4th Cir.1982); Eitmann v. West, 411 So.2d 1127 (La.App. 4th Cir.1982)."
In the recent case of Breland v. Schilling, 550 So.2d 609 (La.1989), our Supreme Court, as in Pique, noted that the exclusionary clause at issue is ambiguous and should be given a reasonable interpretation *748 which gives effect to the subjective intention of the insured and one which accords a reasonable layman's expectation as to the scope of coverage. In Breland, the court opined as follows:
"This clause does not by its precise terms exclude coverage for bodily injury caused by the insured's intentional act. Rather, it excludes coverage for bodily injury `expected or intended from the standpoint of the Insured.' The phrase `bodily injury ... which is expected or intended,' emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury producing act. The next phrase, `from the standpoint of the Insured,' emphasizes again that it is the insured's subjective intention and expectation which delimit the scope of the exclusion. The subjective intention and expectation of the insured determine which injuries fall within and which fall beyond the scope of coverage under this policy."
In Breland, the court adopted the fact-sensitive test for inquiring into the subjective intention or expectation of the insured and rejected the approach that an insured intends, as a matter of law, all injuries which flow from an intentional act. Acknowledging the difficulty of applying the intended injury exclusion in a situation where, although the insured obviously intended to traumatize the victim, a question exists as to the extent or gravity of trauma which the insured intended, the court concluded as follows:
"We hold, therefore, that when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred. Whether a given resulting bodily injury was intended `from the standpoint of the insured' within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact, in this instance the trial jury."
In our case, for purposes of the motion for summary judgment, Aetna concedes the facts as alleged in plaintiffs' petition. These facts are:
"On or about the 5th day of June, 1986 at Lafayette, Louisiana, the minor child, Jonathan [sic] Zeno, did forcefully, criminally and maliciously hold a knife to the throat of the minor, Kevin Menard, and did force Kevin Menard, against his will to submit to sexual anal intercouse.
During the act of anal intercourse the said Jonathan [sic] Zeno did further threaten Kevin Menard by stating that he would kill Kevin if he told anyone what Jonathan [sic] Zeno had forced him to do.

. . . . .
As a consequence of said unlawful, aggravated unprovoked and vicious assult [sic] inflicted upon said Kevin Menard by Jonathan [sic] Zeno, petitioners have been forced to obtain medical treatment and counselling for both Kevin Menard and his mother, Julie Menard. Said Ricky [sic] Menard has suffered severe psychological damage from this act."
Although, in the usual case, the issue concerning application of an intentional injury exclusion involves factual determinations which would preclude summary judgment, in our view, the conceded facts concerning the intentional act and the claimed injuries in this case are such that there can be no factual dispute material to a determination that the intentional injury exclusion of the Aetna policy is applicable.
The record confirms that Kevin's injuries and the damages which he and his parents seek are consistent with the clinical picture of a child sexually abused, as opposed to the "freak" and unintended injuries suffered in Breland. Other than his age, there is no evidence or allegation that Johnathan suffered from any mental defect which would preclude his comprehending *749 the nature and consequences of his acts. von Dameck v. St. Paul Fire & Marine Ins., 361 So.2d 283 (La.App. 1st Cir.1978), writ denied, 362 So.2d 794 (La.1978) and 362 So.2d 802 (La.1978). We note that Johnathan was sixteen years old at the time of the alleged act and was of average to above average intelligence according to his Lafayette High report card, Science Research Association (SRA) skills profile and the Louisiana State Assessment Program (LSAP) test. His psychiatric evaluations showed no evidence of psychosis. Our examination of the entire record viewed in a light most favorable to the plaintiffs convinces us that Johnathan intended Kevin's injuries or knew they were substantially certain to follow. We do not believe a reasonable layman would expect insurance coverage for such an act and the resulting injury. Since the bodily injury experienced by Kevin was expected or intended from the standpoint of an insured (Johnathan), the exclusion applies and summary judgment was properly granted.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.